ANCHOR MOTOR FREIGHT, INC. ET AL. *v.*
SUBSEQUENT INJURY FUND

[No. 140, September Term, 1975.]

*Decided September 28, 1976.*

The cause was argued and reargued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

Argued and reargued by *Glenn C. Parker* and *Alfred M. Porth,* with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief, for appellants.

Argued and reargued by *Dennis M. Andreone, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *H. George Meredith, Jr., Special Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This workmen's compensation case, here on certiorari to the Court of Special Appeals, involves the liability of an employer and its insurance carrier as well as that of the Subsequent Injury Fund when a claimant, initially determined to be only permanently partially disabled due to the combined effects of a previous impairment and a subsequent compensable injury, is later found on reopening to have become permanently totally disabled.

Two injuries to claimant Sidney Compton while employed by Anchor Motor Freight, Inc., one in 1961 and the other in 1966, and three entwining orders of the Workmen's Compensation Commission, in 1962, 1968, and 1974, have led to this controversy, but only the 1974 order is directly in dispute here. As a consequence of his first accident, wherein the employee suffered a fractured spine and severe injuries to both hands, the Commission in 1962 awarded Compton compensation after determining that he had sustained a permanent partial disability. In 1966 the employee was injured in the second accident whereby he suffered a fracture to his left ankle and left shoulder blade. Following this occurrence, the Commission in 1968 found the claimant was then afflicted with a permanent partial disability amounting to an 80% industrial loss of the use of his body, 28% due to the previous impairment associated with the 1961 accident and 52% due to the 1966 accident. The award,

made under the "Other Cases" provision of Maryland Code (1957, 1964 Repl. Vol.), Art. 101, § 36 (4),[1] was apportioned between the employer and insurer (the petitioners) and the Subsequent Injury Fund (the respondent), the employer being required to pay 52% and the Fund being responsible, with a credit for that amount previously paid in conjunction with the 1961 accident, for the remaining 28%.[2] Claiming a worsening of his condition, Compton, as authorized by Code, Art. 101, § 40 (b) and (c), filed a timely petition in December of 1973 with the Commission, seeking an increase in his award. Subsequent to a hearing on this request, the Commission issued an order on May 9, 1974, which in pertinent part reads:

> "The Commission, having granted the claimant's petition to reopen, finds on the issue presented that the claimant is now permanently totally disabled as a result of his accidental injury of November 29,

1. Section 36 of Article 101, Maryland Code (1957, 1964 Repl. Vol.), delineating benefits payable to claimants (amended as to amounts, see 1976 Cumulative Supplement), is divided into several subsections which apply to various types of disabilities, the following of which are applicable to this appeal: § 36 (1), pertaining to permanent total disabilities; § 36 (3), applying to permanent partial disabilities (enumerated injuries); and § 36 (4), pertaining to permanent partial disabilities (other, non-specific cases).

2. This apportionment was made pursuant to Maryland Code (1957, 1964 Repl. Vol.), Art. 101, § 66 (1), which provides in pertinent part:

> "Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the 'Subsequent Injury Fund,' created for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability."

196[6], and is entitled to compensation benefits in the amount of $30,000.00 under the provisions of Section 36, Subsection 1 of Article 101. Inasmuch as the claimant was awarded compensation benefits under the Order dated December 20, 1968 in the amount of $13,858.00 to be paid by the employer and insurer and $7,462.00 for the preexisting condition, the claimant is now entitled to $8,680.00 to be paid by the employer and insurer, which is in addition to money previously awarded under the Order dated December 20, 1968.

"It is, therefore, this 9th day of May, 1974, by the Workmen's Compensation Commission ORDERED that Anchor Motor Freight, Inc., employer, and Transportation Insurance Company, insurer, pay unto Sidney Compton, claimant, compensation for permanent total disability at the rate of $55.00, payable weekly . . . not to exceed the sum of $8,680.00 allowable under 'Other Cases'; . . ."

On rehearing the Commission affirmed this ruling and thereafter a series of appeals ensued. The employer-insurer appealed this decision to the Superior Court of Baltimore City, contending that although the claimant concededly had become permanently and totally disabled, the Commission had erred in charging the entire award against the employer. Judge James W. Murphy agreed and granted the petitioners' motion for summary judgment, the effect of which was to find as a matter of law that the $8,680 supplemental award should be apportioned between the employer and the Subsequent Injury Fund. On appeal by the Fund,[3] the Court of Special Appeals reversed this decision, *Subsequent Injury Fund v. Compton,* 28 Md. App. 526, 346 A. 2d 475 (1975), and, after concluding that the trial court

---

**3.** Following the initial argument before this Court, we directed that the case be reargued, confined to the question raised by us of whether, in view of the fact that the claimant did not appeal the ruling of the trial court, the Subsequent Injury Fund alone had sufficient interest at that time to authorize its appeal. We conclude that it did and therefore, without further discussion of this point, we will proceed to decide the case on the merits as briefed and argued by the parties.

erred in its interpretation of the appropriate law, directed that further proceedings be conducted to determine the relative liabilities of the parties. We granted certiorari and will now affirm that decision.

In order to understand better why we agree with this ruling of the Court of Special Appeals, we think it useful to review briefly the policies behind and the rationale of the Subsequent Injury Fund. Judge Finan for this Court in *Subsequent Injury Fund v. Pack*, 250 Md. 306, 308, 242 A. 2d 506, 508 (1968) encapsulated the Fund's purpose thusly:

> "[It] was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, coupled with previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries. By the terms of the statute, if the employee sustained a subsequent compensable disability but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance carrier would only be liable for compensation payable by reason of the subsequent injury. The Subsequent Injury Fund, funded by assessments imposed upon employers and insurers, by statute, would contribute the balance of the total award, so that the sum of the two payments would equal the compensation provided by statute for the combined effects of both the previous disability and the subsequent injury."
> *See Subsequent Injury Fund v. Thomas*, 275 Md. 628, 633-34, 342 A. 2d 671, 674-75 (1975).

Payments from the Fund are regulated by Code (1957, 1964 Repl. Vol.), Art. 101, § 66 (1), *see* note 2 *supra*, which contains three basic prerequisites to compensation, recently summarized for this Court by Judge Eldridge in *Subsequent*

*Injury Fund v. Thomas, supra,* 275 Md. at 632, 342 A. 2d at 674:

> "First, the employee must have a 'permanent impairment due to a previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment.' Second, the employee must incur 'a subsequent disability by reason of a personal injury, for which compensation is required by' the Workmen's Compensation Act. Finally, the 'previous impairment and subsequent accidental injury,' when combined, must result in total disability or a permanent partial disability which exceeds 50% of the body and which is 'substantially greater . . . than that which would have resulted from the subsequent injury alone.' "

Assuming that these conditions are satisfied (and concededly they are in this case), the Fund is directed to contribute to the employee's compensation an amount equal to the difference between the award payable for the subsequent injury alone and that payable for the second injury combined with the previous impairment. Code (1957, 1964 Repl. Vol.), Art. 101, § 66 (1); *see Bosley v. Jackson,* 250 Md. 401, 404-05, 243 A. 2d 513, 514-15 (1968). *See generally* 2 *A. Larson, The Law of Workmen's Compensation* § 59.34 (1974). A graphic demonstration of this general principle as to how the Fund supplements an award otherwise totally borne by the employer may be found in *Reliance Insur. Co. v. Watts,* 16 Md. App. 71, 293 A. 2d 836 (1972). In that case a claimant who had had his left leg amputated following an automobile accident which occurred prior to his employment, suffered injuries during the course of his employment resulting in the loss of his other leg, the combined effects of which left him with a permanent total disability. Under the statute the employer was required to pay only for the loss of one leg under the specific schedule of benefits in § 36 (3), as if that were the full extent of the injury, while the Fund was liable for the remainder of benefits payable under § 36 (1) to which the claimant was entitled as a totally disabled person. *Id.* at 75-76, 293 A. 2d at

838-39. Consequently the employer was not penalized for hiring a worker with a preexisting impairment.

Nonetheless, under the Maryland statute the Fund makes no contribution where the subsequent injury *alone* is of such severity that it accounts for the total permanent disability apart from any contribution by the previous impairment, because in such a case the injury is not "substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone . . . ." § 66 (1).[4] As explained by Professor Larson in his treatise on workmen's compensation law:

> "If the second injury alone, say the loss of both legs, would call for total permanent disability benefits, and if the claimant had a preexisting impairment such as blindness in one eye, plainly the difference between the compensation payable for the second injury and that payable for the combined injuries is zero, and the Fund incurs no liability." 2 *A. Larson, supra,* § 59.34 at 10-333 to -334. *See generally Subsequent Injuries Fund v. Industrial Accident Comm'n,* 44 Cal. 2d 604, 283 P.2d 1039, 1040 n. 1 (1955); *Tuomela v. Reserve Mining Co.,* 299 Minn. 203, 216 N.W.2d 638 (1974) (per curiam); *Andersen v. New York Hospital,* 5 App.Div.2d 730, 169 N.Y.S.2d 176, 177-78 (1957) (memorandum decision), *motion for leave to appeal denied,* 4 N.Y.2d 674, 171 N.Y.S.2d 1027 (1958).

This result is both logical and equitable since in these circumstances we can perceive no policy consideration which would cause the legislature to relieve the employer of his full responsibility for an accident which occurs during the course of the employment.

---

4. Similarly, two other situations exist under the Maryland statute in which the Fund makes no contribution even though a previous impairment is present — where the previous impairment either contributes nothing to the final partial or total disability, or where, unrelated to a compensable injury, it is the exclusive cause of the final disability. *See* § 66 (1). *See generally Schulman v. Male,* 70 N.J. Super. 234, 175 A. 2d 450, 454 (App. Div. 1961); *Special Indemnity Fund v. Henderson,* 394 P. 2d 466, 468 (Okla. 1964); 2 *A. Larson, supra,* § 59.32 at 10-312 to -315.

Turning to the present controversy, it is unclear whether the petitioners accept the previously expressed principles, but in any event they certainly do not believe they all apply to the reopening of the award here. Although both parties agree that the claimant was shown to be permanently and totally disabled in 1974, that the increase in the disability was due solely to a worsening of the 1966 compensable injury and that Compton is entitled to be compensated at the higher rate under the schedule applicable to permanent total disabilities, they are in disagreement as to whether there should be any contribution by the Fund toward payment of the supplemental award. The employer-insurer claims that because the Commission did not, and could not, change its 1968 finding that the claimant's condition was due in part to a 28% permanent partial disability caused by the previous impairment, it was foreclosed from finding in 1974 at the reopening hearing that Compton was 100% disabled due solely to the 1966 compensable injury. The employer and insurer in effect argue that the 1966 portion of the disability could only increase 20% (from 52% to 72%) since the 28% disability due to the 1961 accident was still present and thus contributed to his total disability. From this premise the petitioners contend — presumably on the theory that the claimant could be no more than 100% disabled — that the Commission could only direct them to pay for the 20% increase as authorized under the § 36 (4) "Other Cases" provision (because the employer under their theory was not solely responsible for the claimant's total disability), with the Fund paying the balance of the $30,000 award due the claimant under § 36 (1) for his concededly permanent total disability. On the other hand, the Fund argues that the Commission had the power to find that the claimant's disability as of 1974 was due totally to the injury incurred in 1966 and that such a finding would require the employer to pay the total amount necessary to bring the claimant's award to the maximum allowable under § 36 (1) since, in such a case, the subsequent injury by itself would account for the claimant's permanent total disability. We, as did the Court of Special Appeals, agree with this analysis made by the respondent.

In reaching this conclusion, we initially point out that the Commission was not irrevocably bound to its 1968 findings when it reopened the case in 1974. Under the controlling statute, Code, Art. 101, § 40 (c), the Commission has the power to "make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified." *See Adkins v. Weisner*, 238 Md. 411, 414, 209 A. 2d 255, 256 (1965). We reject the petitioners' reading of *Subsequent Injury Fund v. Thomas, supra*, as support for their contention that the Commission could not change its prior ruling regarding the extent to which the previous impairment contributed to the claimant's disability. The teachings of *Thomas* are inapplicable here since that case dealt only with limits on the statutory liability of the Fund and the point in time at which the previous impairment is to be measured, not with the power of the Commission to modify its own findings as they affect the liability of the employer and its insurance carrier.

Moreover, we cannot accept the petitioners' underlying contention to the effect that the employer under the circumstances here could not, as a matter of law, be required to pay § 36 (1) benefits. As delineated earlier in this opinion, the Fund does not contribute when the subsequent injury *at the time of its occurrence* is sufficiently severe to render the claimant permanently and totally disabled irrespective of a previous impairment. We discern no reason to do other than apply that principle to a situation where the subsequent injury worsens *at a later time* to such an extent that it can account for the permanent total disability, again disregarding the effects of the previous impairment. In both situations it is reasonable for the statute to hold the employer liable for the full effects of the compensable injury notwithstanding the fact that a previous impairment existed at the time of the subsequent accident. In short, we see no reason to distinguish cases merely because in one the compensable injury is totally disabling at the time of its occurrence and in the other the subsequent injury later worsens to the same, totally disabling extent, except, of course, that in the latter case the employer would receive

credit for benefits already paid prior to the reopening and modification of the award. Although this makes it possible for this claimant to be suffering a theoretical total of 128% disability, such a result is not illogical in this area of the law. As Judge Melvin in this case reasoned for the Court of Special Appeals (28 Md. App. at 532, 346 A. 2d at 478):

> "In the context of the Workmen's Compensation Law, if one suffers injuries resulting in permanent partial disability of a member of his body or of his body as a whole, it does not necessarily follow that a subsequent injury cannot result in his total and permanent disability without attributing that result to the prior injuries to any substantial degree or to any extent at all. Many examples come to mind. One will suffice: One is 50% permanently and partially disabled because of a back injury. In a subsequent accident he loses both legs. Could it be denied that the subsequent injury alone resulted in permanent total disability? We think not."

Accordingly, we hold that if it is determined that a subsequent compensable injury (in this case the 1966 accident) following a preexisting impairment (here the 1961 injury) alone accounts for a permanent total disability, whether that total disability occurs immediately or as a result of the worsening of the subsequent injury (as may be the case here), the employer is liable to the claimant for payments under § 36 (1) without contribution by the Fund.

It follows from what we have said that it was error for the trial court to grant the employer's summary judgment motion based on an erroneous interpretation of the law, and accordingly the Court of Special Appeals was correct in vacating the summary judgment and remanding the case for further proceedings.

*Judgment of the Court of Special Appeals affirmed.*
*Costs to be paid by the petitioners.*