BLANCHE B. VINCI v. ALLIED RESEARCH
ASSOCIATES, INC. et al.

[No. 1127, September Term, 1981.]

*Decided May 6, 1982.*

The cause was argued before Liss and Wilner, JJ., and Clayton C. Carter, Associate Judge of the Second Judicial Circuit, specially assigned.

*Leonard S. Bernstein* for appellant.

*George M. Church* and *John Ulrich, Jr.,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellees.

Wilner, J., delivered the opinion of the Court.

On January 14, 1974, while in the employ of appellee, Allied Research Associates, Inc. (Allied), appellant fell into a hole and injured her back, left leg, and shoulder, as a result of which she filed a workmen's compensation claim. Because appellant had some preexisting injuries, the Subsequent Injury Fund (the Fund) was impleaded into the case.

On January 16, 1976, the Workmen's Compensation Commission found that appellant had a 60% industrial loss of the use of her body as a whole, 20% being due to the accident of January, 1974, and 40% being due to the preexisting condition. An award was made, on that basis, against both Allied and the Fund. Dissatisfied, both appellant and the Fund appealed to the Circuit Court for Anne Arundel County.

After trial in that court on April 22, 1977, six issues were submitted to a jury, which returned verdicts as follows:

(1) Appellant had a permanent industrial disability of 90%;

(2) She had a permanent impairment before the January, 1974, accident;

(3) That previous impairment was *not* a hindrance or obstacle (and was not likely to be 'a hindrance or obstacle) to her employment;

(4) Appellant's present permanent industrial disability was substantially greater because of the combined effects of the previous impairment and the January, 1974, injury than the disability would have been from that injury alone;

(5) All (100%) of appellant's industrial disability was attributable to the January, 1974, injury; and

(6) Ten percent of appellant's present condition was attributable (assessed) to the previous disease or infirmity.[1]

---

1. The answers to issues (5) and (6), seemingly contradictory, have to be regarded in the light of the jury's verdict on issue (4) and our decision in *Blanding v. J. H. Andrews and Sons,* 36 Md.App. 14 (1977), as most recently reviewed by the Court of Appeals in *Trotta v. County Car Center, Incorporated,* 292 Md. 660, 441 A.2d 343 (1982). The rule stated in *Trotta* is that " '[a]pportionment under [Md. Ann. Code art. 101] § 36(7) is available whenever it is shown that the present permanent disability is due in part to a preexisting disease or infirmity,' " but that "for there to be an apportionment, the preexisting disease or infirmity must have combined with the disability for which claim is being made to create a greater disability on the part of the workman than would have occurred without the effect of the preexisting condition." *Id.* at 665, 441 A.2d at 345.

Both *Blanding* and *Trotta* involved the situation in which (1) the claimant sustained a compensable accidental injury which, of itself and without regard to any preexisting condition, caused a total loss of vision in the claimant's eye, but (2) by reason of a preexisting condition, the claimant had a partial loss of vision in that eye prior to the accident. In *Blanding,* this Court concluded that, notwithstanding that the loss of the eye would have resulted solely by virtue of the accidental injury, because there had been a 36% loss of vision in the eye prior to the accident, that percentage of the total loss had to be apportioned to the preexisting condition, and thus only 64% of the total loss was compensable. In *Trotta,* the Court of Appeals took the opposite approach, concluding that in such a case no part of the total loss suffered by the claimant could be attributed to the preexisting condition.

Where the resulting overall disability is a partial rather than a total one and is not restricted to a "member", such as an eye, the problem becomes a bit more difficult. It is not inconsistent in that type of case to say that (1)

The court thereupon remanded the case to the Commission for further proceedings in conformance with the jury's findings. On May 4, 1977, the Commission rescinded its previous order and issued a supplemental one finding that appellant sustained a permanent partial disability amounting to 90% industrial loss of use of her body, 80% being attributable to the January, 1974, accident and 10% to preexisting conditions. The new order recited the jury's findings and stated that it was being issued "in conformity with the Findings and Judgment of the Jury." It revised the amount of the award, and, in light of the jury's third finding — that the preexisting impairment was not a hindrance to appellant's employment — excused the Fund from liability and assessed the award solely against Allied and its insurer.

On September 11, 1978, appellant sought to reopen the proceeding, claiming a worsening of her condition. After a hearing on the matter, the Commission, by order of April 11, 1979, found that, as a result of the January, 1974, accidental injury, appellant had become permanently totally disabled. Following a denial of Allied's request for rehearing and the Commission's affirmance of the award, Allied appealed.

Having been excused from liability in May, 1977, the Fund did not participate in the 1978-79 proceeding before the Commission, although it apparently retained its status as a party. Allied's petition for appeal did not name the Fund as a respondent and made no allegation against or affecting it. The sole complaint made in the petition, as set forth in paragraph 8, was that, by finding that 100% of appellant's disability was attributable to the January, 1974, accident,

---

because of the combination of a preexisting condition and an accidental injury, the resultant disability is greater than it would have been had there been no preexisting condition, (2) the accidental injury, building on the preexisting condition, sufficed by itself to cause the resulting disability to be what it is, but (3) a certain percentage of that disability is attributable to the preexisting condition in the sense that, but for that condition, the accidental injury would not, of itself, have produced the full extent of the resulting disability. That is precisely what the jury seemed to be saying in its answers to issues (4), (5), and (6). It concluded that (1) had appellant not had the preexisting condition, the accidental injury would have produced a permanent disability of 80%, (2) because there was a preexisting condition, the accidental injury produced a disability of 90%, and (3) 10% of that overall disability must therefore be attributed or apportioned to the preexisting condition.

the Commission "overruled" the jury verdict that only 90% was so attributable. The Fund, nevertheless, answered the petition, denying the allegations of paragraph 8, and then moved to be dismissed as a party. The court treated that motion as one for summary judgment and, on April 17, 1980, granted it. Relying on *Subsequent Injury Fund v. Thomas,* 275 Md. 628 (1975), and art. 101, § 66, the court held, correctly, that the Fund would be liable only if a preexisting condition created an obstacle to appellant's subsequent employment, that the jury had previously determined as a fact that such was not the case, and that that determination constituted *res judicata* and could not be relitigated.

The court took a different approach with respect to Allied's *res judicata* argument, which was repeated in its motion for summary judgment. Referring to the Commission's continuing jurisdiction under art. 101, § 40 (c), and to comments made by us in *Subsequent Injury Fund v. Baker,* 40 Md.App. 339 (1978), the court concluded that the Commission had the authority to reopen a proceeding before it and to revise previous orders and awards made by it. *Res judicata,* it said, was not applicable to such determinations. The court therefore denied Allied's motion, and ruled that the sole issue to be resolved in the appeal was whether appellant "is now permanently totally disabled as a result of her accidental injury of January 14, 1974 or whether her permanent total disability is also attributable to the preexisting condition."

After trial, those issues were submitted to a jury, which agreed with the Commission that appellant was 100% permanently disabled but found that 45% of the total disability was due to a preexisting physical condition. The latter finding, of course, served to reduce substantially appellant's benefits, and has prompted this appeal. Two issues are raised, but we need address only the first: whether *res judicata,* or some allied doctrine, precluded the Commission and the court from revising the first jury's finding that 10% of appellant's disability was attributable to preexisting conditions.

Md. Ann. Code art. 101, § 40 (c), provides in relevant part that "[t]he powers and jurisdiction of the [Workmen's Compensation] Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified. . . ." In *Subsequent Injury Fund v. Baker, supra,* 40 Md.App. 339, 345, we characterized that section as "one of the broadest re-opening statutes," one that "not only gives the Commission continuing jurisdiction over each case, [but] also invests the Commission with blanket power to make such changes as in its opinion may be justified." The doctrine of *res judicata,* we said, "is necessarily limited in its effect" by that statute. *Compare Mackall v. Zayre Corporation,* 293 Md. 221 (1982).

In a real sense, § 40 (c) gives the Commission a revisionary power akin to that available to courts under Md. Ann. Code, Courts article, § 6-408, and Maryland Rule 625a, but without the thirty-day limitation. Commission orders are final, in the sense of being appealable, when they are entered, as are judgments entered by a court; but they can be reconsidered and revised by the Commission at its discretion. As *res judicata* would not preclude a court from exercising its authority under § 6-408 or Rule 625a, so it would not preclude the Commission from exercising its authority under § 40 (c). The Commission is not "irrevocably bound" by its earlier findings. *Anchor Motor Freight, Inc. v. Subsequent Injury Fund,* 278 Md. 320, 328 (1976).[2]

We are not dealing here just with a revision of a Commission order or finding, however; this case involves an important added dimension. The findings that the Commission revised, and that the jury re-revised, was one made by a *jury,* not by the Commission. As noted, the Commission's second order, of May 4, 1977, was adopted merely to conform to the

---

2. In this regard, Maryland follows a different rule than some other States. *See, for example, Whitley v. Industrial Commission,* 508 P.2d 778 (Ariz.App. 1973); *Burkhart v. Argonaut Insurance Company,* 238 S.E.2d 400 (Ga. 1977).

jury's findings. That requires us to consider the effect of § 56 of art. 101, concerning appeals from Commission decisions, and the principle laid down in *Buffin v. Hernandez,* 44 Md.App. 247 (1979).

Section 56 authorizes any person aggrieved by a Commission decision to "have the same reviewed by a proceeding in the nature of an appeal" in the appropriate circuit court. The court, in such a proceeding, "shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article [101], and whether it has misconstrued the law and facts applicable in the case decided." On the motion of any party and subject to an exception not relevant here, the court shall "submit to a jury any question of fact involved in such case. . . ." The court, upon the evidence it hears, may confirm, reverse, or modify the Commission decision or remand the case for further proceedings.

Where the claim arises from an accidental injury, as here, rather than an occupational disease, § 56 provides "for a trial which is essentially de novo." *Maryland Bureau of Mines v. Powers,* 258 Md. 379, 382 (1970); *Montgomery Ward & Co., Incorporated v. Bell,* 46 Md.App. 37 (1980). The jury's function in such a case is the same as in any civil case, to weigh conflicting evidence and make findings of fact on the issues presented to it; and, as in any civil case, the jury's findings of fact, if based on legally sufficient evidence, are final and are not reviewable on further appeal. *Atlantic Refining Company v. Forrester,* 180 Md. 517 (1942); *Great A. & P. Tea Co. v. Hill,* 201 Md. 630 (1953). The court's function is merely to apply the law to the facts as found by the jury. *Arundel Corp. v. Plater,* 236 Md. 322 (1964); *Morris v. Christopher,* 255 Md. 372 (1969).

Once that is done, the jury's finding becomes part of the judgment of the *court,* which is a tribunal superior in authority to the Commission. That necessarily limits the Commission's prerogatives under § 40 (c); for if the superior tribunal says in the form of a judgment that is so, the inferior tribunal is not then competent to say that it is not so. That is implicit from what we said and held in *Buffin v.*

*Hernandez, supra,* 44 Md.App. 247, 255. It is a necessary principle. If the Commission, under § 40 (c), could act in direct contravention of the court's judgment, the appeal process provided by § 56 would be rendered meaningless; and we do not believe that the General Assembly intended for § 40 (c) to have that effect.

Although in at least one case the Court of Appeals viewed this type of situation in the context of *res judicata,*[3] we think an equally permissible approach, at least in workmen's compensation cases, is that of collateral estoppel, or to consider the judicial finding as establishing the law of the case. *See The Chatham Corp. v. Beltram,* 243 Md. 138, 149 (1966); *United Dredging Co. v. Industrial Accident Commission,* 284 P. 922 (Cal. 1930). In that way, the conclusiveness of the court's judgment can easily and logically be reconciled with the continuing jurisdiction of the Commission. The Commission would be foreclosed from modifying that which was, in fact, adjudicated by the court, but it would not be precluded from considering and passing upon those things that were not so adjudicated.

This requires some care, especially in a proceeding under § 40 (c), for some things may appear to have been adjudicated in an earlier proceeding that were not, in fact, adjudicated. In the case at hand, for example, the 1977 jury determined (1) that appellant *then* had a 90% permanent disability; (2) that 10% of *that* disability was attributable to a preexisting condition; and (3) that the preexisting injury was not a hindrance to appellant's employment. Those findings are fixed and are entitled to finality; the law would preclude the Commission (or another court) from relitigating them.

---

**3.** *See Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners,* 241 Md. 187, 195 (1966), a zoning case, wherein the Court stated that

"[w]hatever view may be taken of the applicability of the principles of the doctrine of res judicata to administrative or quasi-judicial determinations or actions of an agency, the text writers and the courts are in general agreement that the judgment or order of a court, including a trial court, which affirms or reverses such determinations or actions, ordinarily is."

A finding that appellant had a 90% permanent disability in April, 1977, would not, however, preclude the Commission from later acting under § 40 (c) to determine whether that disability had *changed.* The relevant inquiry in such a proceeding is not what the disability had been, but what, if anything, has transpired since the earlier determination. As Larson points out (3 *Larson's Workmen's Compensation Law,* § 81.32), "[i]n a change-of-condition reopening proceeding, the issue before the Board [Commission] is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based." [4] Upon that premise, the Commission's determination that in April, 1979, appellant's condition had worsened to the point that she then had a 100% permanent disability contravened no principle of *res judicata* or collateral estoppel because it did not involve a relitigation of the issue previously adjudicated or a tampering with the earlier finding of the court.

If, as here, the Commission finds a change in the claimant's previously determined disability, it must then consider and determine what caused the change. Again, it is only the *change* that is at issue. The previous judicial determinations as to attribution are pertinent only in the context of the disability to which they related, serving as a base against which to view the current situation.

Unlike an initial proceeding (as in *Blanding v. J. H. Andrews and Sons,* or *Trotta v. County Car Center, Incorporated,* both *supra,* footnote 1, for example), what the Commission must attribute in the new proceeding is the *change* in disability, not the disability itself. If there was evidence to show that the disability attributable to the accident,

---

4. Larson takes this analysis one step further in § 81.33. There, he states that "[s]ince the issue is the degree of change in claimant's condition, it is important that expert testimony and Commission findings on degree of disability be comparative, not absolute; *i.e.,* they must be phrased in terms of extent or percentage of change from the degree of disability as found by the Commission in the original award." Maryland has not gone quite that far. The principle is important, however, to the extent that it requires both the evidence before the Commission and the Commission's findings thereon to focus on the only relevant issues in a "changed condition" proceeding under § 40 (c); *i.e.,* the change in the condition.

previously fixed at 80%, had worsened to the point of creating a 100% disability and that the increase in overall disability from 90% to 100% was attributable solely to that worsening of the accidental injury, the Commission could properly find as it did without relitigating anything previously adjudicated. The fact that a preexisting condition contributed 10% to appellant's previous 90% partial disability does not preclude a later finding that the accidental injury worsened to the point of creating, by itself, a total disability. *Cf. Anchor Motor Freight, Inc. v. Subsequent Injury Fund, supra,* 278 Md. 320. So long as the focus of the later proceeding remains on the change in condition, the Commission can act without violating *res judicata* or collateral estoppel concepts.

That necessary focus was lost, however, in the second judicial proceeding; and that led to error.

Allied's petition for appeal set forth two complaints about the Commission's determination: (1) that "there was no evidence presented whatsoever which would indicate or prove that the *increase* in the Claimant's disability was a result of the January 14, 1974 accident" (emphasis supplied), and (2) that the Commission "has, in effect, overruled the previous jury finding" that 10% of the disability was due to the preexisting condition. Those were appropriate issues to be raised on appeal — the first a factual one to be resolved by the trier of fact, in this case a jury, the second a legal one for resolution by the court.

Unfortunately, in the trial of the case, Allied was permitted to go well beyond the issues raised in the petition. Rather than merely questioning the causation of any *increase* in appellant's disability, which was the issue before the Commission, Allied sought to relitigate the entire underlying nature and extent of appellant's disability. Its position in this proceeding was precisely that taken in 1977 — that only 5% of appellant's disability was attributable to the accident; and the evidence offered in support of that position, through Dr. Jerome Reichmister, was more or less the same as had been presented to the first jury.

That type of evidence tended to becloud the issues actually before the court, which concerned only whether the Commission erred in finding an increase in overall disability and attributing all of that increase to the accidental injury. Upon the state of this record, the jury should have been asked but two questions: (1) to what extent, if any, did appellant's permanent disability increase beyond 90% since April, 1977; and (2) what proportion of the increased disability was caused by a worsening of the accidental injury and what proportion was caused by a worsening of the preexisting condition?

The jury could have answered those questions without infringing upon either the scope of review afforded by § 56 of art. 101 or the basic principles of *res judicata,* collateral estoppel, or "law of the case." It could have rejected entirely the Commission's first finding, and thus left appellant's disability as it had previously been determined (90%); or it could have concluded that the disability had increased to some point beyond 90% but less than 100%. The jury, if it found some increase in overall disability, could have found that all, some, or none of it arose from a worsening of the accidental injury.

In the absence of any evidence of subsequent *improvement,* however, either in the overall disability or in that part of it arising from the accidental injury, the jury was simply not competent to conclude that the overall disability was less than 90% or that less than 80% of that disability was attributable to the 1974 accident; for any such finding would necessarily have amounted to a relitigation of matters previously adjudicated. The court erred in permitting the jury to go beyond the narrow issues properly before it, thus producing, in this case, an inappropriate verdict.

> *Judgment reversed; case remanded for retrial; appellees to pay the costs.*