GIANT FOOD, INC. ET AL. *v.* OAKLEY W. COFFEY

[No. 162, September Term, 1982.]

*Decided October 8, 1982.*

The cause was argued before Mason, Liss and Adkins, JJ.

*William J. Carter,* with whom were *L. Palmer Foret* and *Carr, Jordan, Coyne & Savits* on the brief, for appellants.

*Martin E. Gerel,* with whom were *Kenneth M. Berman* and *Ashcraft & Gerel* on the brief, for appellee.

Liss, J., delivered the opinion of the Court.

This case arose out of an accidental injury sustained by Oakley W. Coffey, appellee, on December 9, 1975, while he was employed by Giant Food, Inc., one of the appellants herein. Appellee filed a claim for compensation with the Workmen's Compensation Commission (WCC) naming the appellant, Giant Food, Inc., and its insurer, Travelers Insurance Company, as respondents. On January 30, 1978, the WCC issued an order directing that compensation be paid to the appellee in the amount of $54.83 per week, beginning April 19, 1977, and continuing for 62.5 weeks. This was to compensate him for a permanent partial disability of 25% to the right foot. Dissatisfied with this relief, the appellee filed an appeal to the Circuit Court for Montgomery County. The Subsequent Injury Fund was a party to the proceedings held before the WCC but successfully negotiated a settlement with the appellee prior to the matter coming to trial in the circuit court. The settlement was duly submitted to the WCC and approved, and thereafter the Subsequent Injury Fund did not participate in any manner in the proceedings. The matter came to trial before a jury on September 17 and 18, 1981 and the jury returned a verdict finding that the appellee's present condition was causally connected to the accidental injury of December 9, 1975 in that his condition was aggravated, worsened or hastened by the accident. The jury also found that the appellee was totally, permanently disabled and that 30% of the appellee's disability was

attributable to a pre-existing permanent disease or impairment and 100% was attributable to the effects of the December 9, 1975 accident.

Appellants then filed a motion for judgment n.o.v. or, in the alternative, for a new trial, which was denied. The instant appeal followed.

Appellants raise four issues to be determined by this Court:

I. Whether the trial court erred in submitting the issue of permanent total disability, attributable solely to the accident of December 9, 1975 to the jury?

II. Whether the trial court erred in not submitting a written issue to the jury asking whether they affirmed the decision on the Workmen's Compensation Commission?

III. Whether the evidence was sufficient to permit the jury to find that appellee was 100% disabled solely due to the accident of December 9, 1975?

IV. Whether the trial court erred in failing to instruct the jury regarding the involvement of the Subsequent Injury Fund in this case?

## I. and III.

Because of the legal and factual similarities in the determination of these two issues, we shall consider them together.

The following evidence was adduced at trial:

The appellee was, at the time of trial in 1981, approximately 62 years old and had for some forty years (according to his wife) suffered from a disease which affected his nervous system. He first sought treatment for this disease in 1963, from Dr. Francis Mayle, Jr., a neurologist. At that time appellee's major complaint was that his left leg had been "giving out" on him. Dr. Mayle noted that the appellee suffered from spasticity in the lower extremities,

with the left leg more affected than the right, and was also suffering from balance problems. Appellee was placed, at that time, on an exercise program and given medication.

Dr. Mayle continued to treat the appellee over the next fifteen years on a regular basis. In 1963, Dr. Mayle noted some improvement in the claimant's condition which he attributed to the exercise and drugs prescribed. In July of 1975, approximately six months prior to the accident, Dr. Mayle noted for the first time a scissoring effect in Mr. Coffey's gait and the loss of vibratory senses in his legs, which he interpreted as symptoms that the disease was progressing.

The evidence produced before the jury was that the appellee had lost no time from work due to his neurological problems between 1965 and the occurrence of the accident in December of 1975. He had been employed as a grocery clerk for Giant for more than 20 years; his duties included standing eight hours a day and loading and unloading crates weighing up to one hundred pounds.

On December 9, 1975, the appellee, while in the course of his employment as a clerk for Giant, incurred an accidental injury to his right foot, right knee and left knee when a steel loading dock plate weighing more than 120 pounds, fell on his right foot causing him to fall to his knees on the concrete surface of the floor. He was taken to the hospital where X-rays revealed a fracture of the metacarpal bone in his right foot. He was fitted with a walking cast and he returned to work with the cast in place. Appellee began to suffer pain in his right knee approximately six weeks after he fractured his foot. Examination by the treating orthopedist, Dr. Elliot J. Friedel, revealed that although the fracture to the right foot was well healed, there had been bone wash-out, known as osteopetrosis, resulting from a lack of use of the right leg. It was further diagnosed that the appellee suffered a torn median mediscus and a scratching of the posterior ligament, resulting from the December, 1975 injury. Surgery was performed on April 21, 1976, and the appellee was required to wear a cast for an additional six to

eight week period. Further surgery to appellee's left knee was required in November, 1976, also as a result of the December, 1975 injury.

In September of 1976, appellee returned to the care of Dr. Mayle, who noted no real severe progression of the neurological disease at that time. In May of 1977, Dr. Mayle did note clinical progression of the disease which, in his opinion, resulted from the appellee's inability to exercise because of the immobilization of his leg while in the cast. Dr. Friedel likewise stated that the cast had a detrimental effect on the appellee's legs in that muscles not used over a reasonable period of time become weaker as the actual muscle fiber and bulk get smaller. The appellee testified that he was no longer able to perform the normal functions required by his job in that he could no longer lift and carry things around. At the time of the trial he required the use of a walker, having found a cane not helpful because he was unable to maintain his balance.

The medical testimony offered at trial was in sharp conflict. Dr. Mayle opined that the orthopedic injury caused marked deterioration in the appellee's neurological disease and that the deterioration was permanent. He indicated that 30% of the claimant's disability was due to the disease and 70% to the accident and its effect on the disease. He felt that the appellee could not return to his previous work; that his disease was permanent and incurable. He noted that it was impossible to predict how the disease would progress and that sometime in the future the appellee would have been totally disabled due to the neurological disease alone.

Dr. Harold Stevens, the appellant's expert, described the appellee's neurological disease as being pyrimidal tract disease with cerebellar dysfunction, suggesting demyelinating disease rather than primary lateral sclerosis. Demyelinating disease is characterized by the loss of myelin, a sheath covering the nerves in the body, which impairs transmission of the nerve impulses. It is a major symptom of multiple sclerosis. Cerebellar dysfunction refers to a nervous system dysfunction in the cerebellum of the brain char-

acterized by tremor in the upper extremities of the body and ataxia of the lower extremities. Dr. Stevens concluded that the appellee had multiple sclerosis and that the disease was not aggravated by the December, 1975 injury he suffered at Giant, and that the appellee was permanently partially impaired at the level of 65% of his body as a whole, due to the neurological disease from which he suffered.

The appellants now contend that the aforementioned evidence was not sufficient to warrant a submission to the jury of the issue of permanent total disability attributable solely to the December, 1975 accident. They point out that the WCC found that the appellee sustained a 25% disability to the foot, that the Commission's award is presumptively correct, and that therefore the burden was on the appellee to show that the award was wrong. *See* Maryland Code (1957, 1979 Repl. Vol.) Article 101, § 56. *See also Ackerhalt v. Hanline Brothers, Inc.,* 253 Md. 13, 252 A.2d 1 (1969).

The testimony in this case as submitted to the jury makes it clear that the appellee did have a pre-existing neurological disease but that it had not required him to lose any time from work for the ten year period prior to the date of the December, 1975 accident. There was testimony from Dr. Mayle that the appellee's pre-existing neurological impairment had no detrimental consequences on his ability to work. He stated unequivocally that the progression of the disease had been retarded by the medication and the course of exercises he prescribed to the appellee. The doctor contended that the event which changed the course of the appellee's disease was the injury of December, 1975. The initial fracture and the subsequent surgical procedures prevented the appellee from performing the crucial exercises. The result was that the appellee's leg muscles atrophied and caused the surrounding joints to "tighten up." The net result of the orthopedic effects of the 1975 injury caused the progression of his neurological disease to the point that he was rendered permanently and totally disabled. *See Anchor Motor Freight, Inc. v. Subsequent Injury Fund,* 278 Md. 320, 363 A.2d 505 (1976); *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 342 A.2d 671 (1975).

Under the "other cases" provision of Article 101, § 36 (4) (a) of the Code, the jury was required to make its own determination of industrial disability under the following guidelines:

> ... in determining such portion or percentage of impairment resulting in industrial loss, the Commission shall take into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of injury. ...

A finding of industrial loss under the section of the Code cited is equivalent to a finding of loss of earning capacity, *i.e.,* the employee's ability to earn wages after the accident. *See Bethlehem-Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 50 A.2d 799 (1947). There was sufficient evidence submitted to the jury, if believed, which could support its conclusion that the claimant was permanently and totally disabled solely due to his last injury. This is legally correct notwithstanding the pre-existing neurological disability. In *Subsequent Injury Fund v. Compton,* 28 Md. App. 526, 346 A.2d 475 (1975), *aff'd sub nom, Anchor Motor Freight, Inc. v. Subsequent Injury Fund, supra,* we referred to the case of *Congoleum Nairn, Inc. v. Brown,* 158 Md. 285, 148 A. 220 (1930), as "... authority for the proposition that a previous accident resulting in permanent partial disability ... does not preclude the Commission from finding that permanent total disability may be attributed solely to a 'current injury'." [28 Md. App at 534]. In affirming *Compton,* the Court of Appeals stated in *Anchor Motor Freight, Inc., supra:*

> Although ... it [is] possible for this claimant to be suffering a theoretical total of 128% disability, such a result is not illogical in this area of the law. As Judge Melvin in this case reasoned for the Court of Special Appeals (28 Md. App. at 532, 346 A.2d at 478):
>
> "In the context of the Workmen's Compensa-

tion Law, if one suffers injuries resulting in permanent partial disability of a member of his body or of his body as a whole, it does not necessarily follow that a subsequent injury cannot result in his total and permanent disability without attributing that result to the prior injuries to any substantial degree or to any extent at all. . . .

See *Vinci v. Allied Research Associates, Inc.*, 51 Md. App. 517, 444 A.2d 462 (1982).

In this case the evidence was sufficient to permit the jury to conclude that although the appellee was suffering from a pre-existing disease, that disease had not resulted in any industrial disability prior to the accidental injury. In *Congoleum Nairn, Inc. v. Brown, supra,* the Court of Appeals said, ". . . this Court adopts the construction that the consequences to the particular workman determine the degree of disability, so that if an injury deprives him of all the capacity he has left after a previous accident, that result might be classed as total disability from the injury." [158 Md. at 291].

We recognize that in the instant case the jury found that the total disability of the appellee amounted to more than 100%. We find nothing illogical or illegal in such a finding where there is evidence from which it might be determined that the accidental injury caused the appellee, who had not lost any time from work over a ten year period, to become totally disabled from performing any gainful work whatsoever as a direct consequence of the treatment required by the accidental injury. This conclusion is particularly justified in the light of Dr. Mayle's testimony that one could live an entire lifetime with the neurological disease which the claimant had and not become permanently and totally disabled.

## II.

Appellants argue that the trial court erred in not submitting to the jury a written issue indicating that the jury

could, if it found support in the evidence, affirm the decision of the Workmen's Compensation Commission. We find no merit in this contention. The record indicates that the trial court properly advised the jury concerning the presumption that the Commission's decision was correct. The judge also advised the jury that the employee has the "burden of proving by a preponderance of the evidence that that decision is wrong." The court cautioned the jury that — "if you believe that the evidence is evenly balanced then your finding on that issue must be against the person who has the burden of proving it." In light of these instructions given, we find no error. *See Gray v. State,* 6 Md. App. 677, 253 A.2d 395 (1969).

## IV.

Finally, appellants argue that the refusal of the trial court to permit the jury to hear what they allege was the Subsequent Injury Fund's involvement in the case amounted to prejudicial error. We do not agree. The Workmen's Compensation Commission in its original order had found that the Fund was not legally responsible to the appellee. Subsequent to that order a settlement was reached between the appellee and the Fund. The proposed settlement of that claim was submitted to the Commission for its approval and was approved. All parties were advised that the Fund did not intend to participate in the case and would not have its counsel in court. Under these circumstances, the liability of the Fund became a nonissue in the case. Furthermore, the appellants were permitted to offer extensive evidence medically and otherwise, as to the appellee's alleged pre-existing disability. There was no error. *See Adams v. Benson,* 208 Md. 261, 117 A.2d 881 (1955); *Baltimore Transit Co. v. State, for Use of Castranda,* 194 Md. 421, 71 A.2d 442 (1950).

*Judgments affirmed.*
*Costs to be paid by appellants.*