# CLIFFORD DENNISON *v.* HEAD CONSTRUCTION COMPANY ET AL.

[No. 934, September Term, 1982.]

*Decided April 12, 1983.*

The cause was argued before LISS, WILNER and ALPERT, JJ.

*Martin E. Gerel,* with whom were *Kenneth M. Berman* and *Ashcraft & Gerel* on the brief, for appellant.

*Robert C. Erlandson,* for appellees.

LISS, J., delivered the opinion of the Court.

On June 3, 1965, the appellant, Clifford Dennison, sustained an accidental injury to the lumbar region of his lower back, which arose out of and in the course of his employment with the appellee, Head Construction Company.[1] On April 6, 1966, the Workmen's Compensation Commission (hereinafter "the Commission") found that as a result of the accident, appellant was entitled to benefits for a 50% permanent partial disability, 25% attributable to the 1965 accident and 25% due to a pre-existing condition.

The claimant appealed the Commission's award to the Circuit Court for Charles County, which after a jury trial affirmed the award of the Commission.

During the ensuing ten years, appellant experienced numerous problems with his back requiring constant medical treatment as well as numerous hospitalizations for his condition. The medical treatment of the claimant included the installation and subsequent removal of a plate in his back. Due to the problems he was experiencing, on November 18, 1970, the Commission found the appellant to have been rendered temporarily totally disabled for an additional

---

1. Reliance Insurance Company, Head Construction Company's insurance carrier, is also a named appellee in this case. Any reference to the appellee in this case shall include the employer and insurer.

period of time and ordered the appellees to pay claimant further benefits for additional temporary total disability.

On June 8, 1976, the appellant filed with the Commission, pursuant to Maryland Code (1957, 1979 Repl. Vol.), Article 101, § 40 (c) a petition to reopen the nature and extent portion of the Commission's 1966 award due to the worsening of his condition. During the interim period between the filing of issues by the appellant in 1976, and the hearings on the claim of worsening in 1980 and 1981, appellant incurred a separate and distinct injury to the thoracic region of his body, which also affected his lower back. This injury occurred in the District of Columbia on August 21, 1976 and arose out of and in the course of his employment with Traylor S & M, a District of Columbia construction company. As a result of this later injury, the appellant after a hearing was found to be permanently and totally disabled by the U.S. Department of Labor Office of Workers' Compensation Programs and appropriate benefits were awarded on October 23, 1979, pursuant to 33 U.S.C., § 908 (f) (1) of the Longshoremen and Harbor Workers' Compensation Act which had been adopted by the Congress as the District of Columbia Workers' Compensation Act. The Deputy Commissioner made the following pertinent findings of fact:

> 5. That the claimant suffered from existing permanent partial disability resulting from at least six prior surgical procedures in the form of laminectomy and spinal arthrodesis to his back, all of which were precipitated by an industrial injury sustained in 1963; that the employer had actual knowledge of the existing permanent partial disability of the claimant due to his continued employment with this same employer; [2]
>
> 6. That the claimant's pre-existing permanent partial disability, when combined with the injury of August 21, 1976, has resulted in permanent and total disability;

---

2. Appellant's original industrial injury to his back occurred in an unrelated accident in 1963.

7. That the claimant's permanent total disability following his injury of August 21, 1976, was not due solely to his injury on that date, but was due in substantial part to his pre-existing permanent partial impairment.

By the terms of the award as required by § 908 (f) (2) of the Act, Traylor S & M's insurance carrier was ordered to make weekly compensation payments for the period from February 28, 1978, to February 25, 1980, with payments thereafter to be made by the Department of Labor. The weekly benefits and the total compensation payable were substantially greater under the District of Columbia's program than those payable under the Maryland statute.

On October 27, 1980, the Commission held that appellant's worsening of condition was not causally related to his accidental injury of 1965. Subsequent to a rehearing that order was affirmed by the Commission on August 3, 1981.

On August 6, 1981, the appellant filed an appeal to the Circuit Court for Charles County on the issue of whether the Commission was correct in finding that his present worsening of condition was not causally related to the accidental injury of June 3, 1965.

On May 6, 1982, the appellee filed a motion for summary judgment on the ground that there did not exist a genuine question of material fact as to whether the appellant's worsening of condition was causally related to his accidental injury in 1965. Appellee further contended that even if such a question of fact did exist, the appellee was no longer responsible for such additional permanent partial disability benefits attributable to the worsening of condition due to the fact that the Office of Workers' Compensation Programs of Washington, D.C. had found appellant permanently totally disabled as a result of a pre-existing permanent partial disability and injuries sustained from the accident of August 21, 1976. A hearing was held on May 21, 1982, in the Circuit Court for Charles County. The trial judge ruled that although there was sufficient evidence in the record, based

upon the medical reports, the testimony presented, and any additional evidence which might be produced at trial, upon which a trier of fact could find that appellant's worsening was causally related to the 1965 injury, the appellee was no longer obligated to make such payments to appellant for the worsening due to the District of Columbia's ruling that the appellant was permanently and totally disabled, notwithstanding that the District of Columbia award involved a different employer and insurer, as well as a different injury. Appellant then filed this appeal, raising the following issues to be determined by this Court:

> I. Whether a claimant is precluded as a matter of law from receiving workmen's compensation benefits simultaneously for loss of wage earning capacity from two different employers arising from two separate accidents where the loss of wage earning capacity is predicated upon the same anatomical disability?
>
> II. Whether the collateral source rule applies to workmen's compensation cases?

## I.

Appellant argues that it is more equitable to allow an injured employee, who is permanently totally disabled, and who has been paid for a pre-existing injury arising in a foreign jurisdiction, to receive the benefit of recovering for an amount greater than 100% of loss, rather than to allow the benefit to inure to the employer and insurer, who would be excused from the responsibility for the payment of benefits because the employee was subsequently injured while working for a different employer-insurer.

Appellee contends that appellant seeks compensation for his alleged worsening of condition pursuant to Maryland Code (1957, 1979 Repl. Vol.), Article 101, § 36 (4). That provision allows compensation to claimants for disability other than those scheduled disabilities enumerated in Article 101, § 36 (3) of the Code. Disability under § 36 (4)

refers to loss of wage earning capacity, *i.e.*, the employee's ability to earn wages after the accident. *Miller v. James McGraw Co.,* 184 Md. 529, 42 A.2d 237 (1945); *Giant Food, Inc. v. Coffey,* 52 Md. App. 572, 451 A.2d 151 (1982). It is appellee's position that the appellant's alleged worsening of condition is being paid for by the benefits allowed under the District of Columbia award and that an additional award for the same condition is not contemplated or permissible under the Maryland statute. Appellant maintains that he is not receiving the same benefits under the District of Columbia Act that he is entitled to receive for his alleged worsening of condition in Maryland. He further alleges that there is no evidence that the District's special Fund administered by the Department of Labor is paying for appellant's worsening of condition. The record discloses that appellant is receiving much more under the District of Columbia Act than he would be entitled to receive from the appellees in Maryland under Article 101, § 36 (4) (a). The District of Columbia's award specifically indicated that it was based, at least in part, on injuries sustained by the appellant as far back as 1963; and that the award of permanent total disability was based not only on the injury in the District which occurred in 1976, but "in substantial part on his pre-existing permanent partial disability." It is significant that appellant and his counsel in the District of Columbia proceeding entered into a stipulation which stated in pertinent part as follows:

> [I]t is further stipulated, and the medical reports show, that since 1963, the patient has had at least six surgical procedures in the form of laminotomy and spinal arthrodesis all of which was precipitated by an industrial injury sustained in 1963 when a foot ladder fell on him. The patient has residual disabilities from this accident and was not free from symptoms.
>
> It is further stipulated that on May 8, 1978 the attending physician, Guillermo E. Sanchez, M.D. stated:

"Clifford Dennison is no longer having problems related to the injury sustained on the 21st of August, 1976 (compression of T-10) in my opinion.

Most of his problems are related to the previous pre-existing injury."

Under the circumstances it is clear to us that the appellant has in fact been receiving benefits from the District of Columbia award which encompassed any worsening of his condition attributable to the 1963 injury.

Appellant argues that even assuming, *arguendo,* that the Department of Labor is paying for the worsening of condition, appellee's argument that an individual cannot be more than 100% disabled is erroneous. To support that contention appellant relies on *Subsequent Injury Fund v. Compton,* 28 Md. App. 526, 346 A.2d 475 (1975), *aff'd sub. nom., Anchor Motor Freight, Inc. v. Subsequent Injury Fund,* 278 Md. 320, 363 A.2d 505 (1976), where the Court of Appeals stated:

... it is reasonable for the statute to hold the employer liable for the full effects of the compensable injury notwithstanding the fact that a previous impairment existed at the time of the subsequent accident.... Although this makes it possible for this claimant to be suffering a theoretical total of 128% disability, such a result is not illogical in this area of the law. [*Id.,* at 328-329].

The appellant, however, misreads the significance of *Subsequent Injury Fund v. Compton, supra.* In that case we referred to *Congoleum Nairn, Inc. v. Brown,* 158 Md. 285, 148 A.2d 220 (1930), as "... authority for the proposition that a previous accident resulting in permanent partial disability ... does not preclude the Commission from finding that permanent total disability may be attributed *solely* to a 'current injury'." In affirming *Compton,* the Court of Appeals adopted the reasoning of Judge Melvin of this Court [28 Md. App. at 532], and stated:

> In the context of the Workmen's Compensation Law, if one suffers injuries resulting in permanent partial disability of a member of his body or of his body as a whole, it does not necessarily follow that a subsequent injury cannot result in his total and permanent disability without attributing that result to the prior injuries to any substantial degree or to any extent at all. ... [278 Md. at 329].

See *Giant Food, Inc. v. Coffey, supra; Vinci v. Allied Research Associates, Inc.,* 51 Md. App. 517, 444 A.2d 462 (1982).

We conclude that the award of permanent total compensation made in the District of Columbia in this case was based substantially upon the permanent partial disability sustained by this claimant in the series of unfortunate injuries which he experienced in the course of his employment in both Maryland and in the District of Columbia. To permit double recovery for the same injuries in the two separate jurisdictions would amount to the payment of double compensation for the same loss of wage earning capacity caused by the same injuries. This is not contemplated by the Workmen's Compensation Act.

Although we have found no case directly on point either in Maryland or in other jurisdictions, there are, however, relevant statutes and cases in Maryland which are helpful in determining the legislative intent concerning the issues here presented.

In *Gratz v. Bethlehem Steel Co.,* 162 Md. 33, 158 A. 30 (1932), the claimant sustained an injury to his right leg which resulted in an amputation. The State Industrial Accident Commission, the predecessor to the present Workmen's Compensation Commission, passed an award of temporary total disability and permanent partial disability, the latter to be paid by the employer once temporary total disability ended. The claimant died during the period of temporary total disability as a result of the injury, before the period of permanent partial disability began. The widow applied for and was awarded dependency benefits under the Act,

whereupon the employer petitioned the Commission to rescind the previous award of permanent partial disability. The Commission rescinded the previous award, and the widow appealed to the trial court, which affirmed the Commission's award. In affirming the trial court, the Court of Appeals stated: "There is no provision in the Workmen's Compensation Law which would require or justify the imposition, upon the employer and insurer, of the double burden of paying death benefits and also permanent partial disability compensation, under the conditions present in this record. . . ." [162 Md. at 36].

In *Lankford v. Mayor & City Council of Federalsburg,* 44 Md. App. 393, 408 A.2d 779 (1979), this Court had before it a case in which a claimant sustained an accidental injury while employed by the Mayor and City Council of Federalsburg. The claimant received an award for permanent partial disability under the "other cases" provision of the Code, for 70% industrial loss of use of the body as a whole. Less than a month after the passage of that order the claimant died as a result of a new injury sustained while he was working for another employer. The widow filed for benefits as a result of the second injury and was awarded full dependency benefits. The insurer for the original accident petitioned the Commission to suspend payments of compensation for the first accident. This Court held that the insurer in the first accident was relieved of its obligation to pay benefits to the widow because she was receiving full compensation benefits as a result of the second accident. As this Court noted:

> [I]t [is] abundantly clear that a sound reading of § 36 (4) (c) evinces the intent of the legislature that where an original claimant's death results from any cause or causes which entitle his dependents to compensation payments under the Act, payments under the original award to which he would have been entitled but for his death do not survive and must be abated or terminated. [44 Md. App. at 397].

The two cases we have here cited are admittedly distinguishable factually from the case at bar; however, we find that they are relevant to the proposition that Maryland law does not permit double recovery for the same loss of wage earning capacity even if the claim involves two separate employers and two separate injuries.

The record makes it amply clear that the claimant here is in fact seeking double recovery for the same loss of wage earning capacity for which he has already been allowed benefits under the District of Columbia Act, which are greater than those allowable under Maryland law.

We conclude that because appellant was awarded maximum benefits from the District of Columbia employer, and because that award was based substantially upon the pre-existing disability of the claimant chargeable to his injury in 1965 while employed by the appellee herein, the appellant may not now, as a matter of law, recover additional benefits for the alleged worsening of his condition caused by the 1965 accident. We find no error in the action of the trial judge in granting appellee's motion for summary judgment.

## II.

Appellant maintains that the collateral source rule is applicable in the present case and that as a result of the application of that rule appellant is entitled to benefits even though he is receiving full compensation for loss of wage earning capacity under the District of Columbia Act. Appellant concedes that the collateral source rule is generally thought to have application in tort cases only but that in some instances it has been held to be applicable in contract cases. *See N.L.R.B. v. Marshall Field & Co.,* 129 F.2d 169 (7th Cir. 1942), *aff'd, Marshall Field & Co. v. N.L.R.B.,* 318 U.S. 253, 87 L.Ed. 744 (1943).

The *Restatement (Second) of Torts,* § 920A (2) comment b (1977) defines benefits received from collateral sources as:

> Payments made or benefits conferred by other sources are known as collateral source benefits. They do not have the effect of reducing the recovery against the defendant. . . .
>
> \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*
>
> . . . it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.

Comment c(2) includes employment benefits among the types of benefits to which the doctrine applies:

> Employment benefits. These may be gratuitous, as in the case in which the employer, although not legally required to do so, continues to pay the employee's wages during his incapacity. They may also be benefits arising out of the employment contract or a union contract. They may be benefits arising by statute, as in worker's compensation acts or the Federal Employers' Liability Act.

Appellant contends that the benefits he received as a result of the 1976 accident in the District of Columbia result from a collateral source and should not redound to the benefit of the employer or insurer herein. It is his contention that the claimant is entitled to the recovery of all benefits due under the 1965 injury even though he was compensated for the injuries and the loss of wage earning capacity, either gratuitously or by contract, from a third person. *See Leizear v. Butler,* 226 Md. 171, 172 A.2d 518 (1961); *Plank v.*

*Summers,* 203 Md. 552, 102 A.2d 262 (1954). We do not agree. We find no case in Maryland which makes the collateral source rule applicable to workmen's compensation claims. Workmen's compensation does not involve questions of wrongdoing. It is not intended to punish wrongdoers or to deter wrongful conduct. It is established to compensate employees for losses resulting from industrial accidents; not to punish employers for accidents occurring to their employees.

Appellant mistakenly seeks to apply tort principles to workmen's compensation. Professor Larson in The Law of Workmen's Compensation (Vol. I, § 2.70 at 13-14) makes the distinction clear when he summarizes the difference as follows:

> [t]ort litigation is an adversary contest to right a wrong between the contestants; workmen's compensation is a system, not a contest, to supply security to injured workers and distribute the cost to the consumers of the product. [citations omitted].

Appellant maintains that the insurance contract between the insurer and the employer created the status of a third party beneficiary, vis-à-vis the employee. On this basis appellant argues that the collateral source rule should be applicable to contract cases as well as tort cases. Appellant cites no Maryland authority for the proposition that an employee is a third party beneficiary of a workmen's compensation insurance policy. As stated by the Minnesota Court of Appeals in *Hubbard Broadcasting, Inc. v. Loescher,* 291 N.W.2d 216 (1980), the rationale for the refusal of most courts to apply the collateral source rule in contract cases is based on the following:

> The collateral source rule provides in general that compensation received from a third party will not diminish recovery against a wrongdoer. Because its purpose is punitive, this doctrine has generally been applied only to tort cases. Although the wronged party may be overcompensated, the collat-

eral source rule requires that a wrongdoer pay for the full extent of the damages he has caused. [citation omitted].

Courts have been leery of invoking the collateral source rule in contract cases for just this reason. As the court stated in *Patent Scaffolding Co. v. William Simpson Constr. Co.,* 256 Cal. App.2d 506, 511, 64 Cal. Rptr. 187, 191 (1967):

> The collateral source rule is punitive; contractual damages are compensatory. The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance. [*Id.,* at 222-223].

We conclude that the collateral source rule is not applicable in workmen's compensation cases in Maryland. In the light of our conclusions on the several issues raised for determination by this appeal we find that the trial court did not err in granting appellee's motion for summary judgment.

Appellant filed a reply brief in this case in which a number of new issues were raised. In reply, the appellees filed a motion to strike appellant's reply brief or, in the alternative, for leave to file a response to the reply brief. Appellant contended that the Charles County Circuit Court had no jurisdiction to consider the legal question as to whether the award in the District of Columbia barred any further proceedings in Maryland. We do not agree. This legal issue was properly before the trial court and the court had jurisdiction to dispose of the issue under summary judgment.

The remaining two issues raised by appellant in his reply brief were not before the Workmen's Compensation Commission or before the trial court on appeal and were raised for the first time on appeal in the reply brief. Under Maryland Rule 1085 we decline to consider these issues.

*Judgment affirmed, costs to be paid by appellant.*