869 A.2d 391

Terry M. MARSHALL

v.

UNIVERSITY OF MARYLAND MEDICAL
SYSTEM CORPORATION.

No. 2258, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Feb. 28, 2005.

Christopher Moylan (Martin I. Moylan, on brief), Towson, for appellant.

Stan M. Haynes, Baltimore, for appellee.

Panel KENNEY, ADKINS and CHARLES E., MOYLAN, JR. (Retired, Specially Assigned) JJ.

ADKINS, J.

Appellant, Terry Marshall, challenges the grant of summary judgment to appellee, the University of Maryland Medical System Corporation ("the University"), by the Circuit Court for Baltimore County during a review of a Maryland Workers' Compensation Commission ("the Commission") award. Marshall presents the following issues for our review:

I.    **Did the circuit court err in reversing an order of the Commission that found Marshall's entire award of 25% permanent partial disability attributable to the later of two claims involving similar parts of the body?**

II.    **Assuming that the Commission's award was attributable to both claims, did the circuit court err in finding that the Commission was required to apportion its award between that claim?**

Finding no error in the circuit court's grant of summary judgment to the University, we affirm.

## FACTS AND LEGAL PROCEEDINGS

On May 21, 1999, while walking down a hallway at work, Marshall slipped on a grape and fell, landing on both knees. Due to the injury sustained from this accident, Marshall underwent arthroscopic surgery on her right knee. On April 10, 2001, Marshall was involved in a second accident at work when a chair Marshall was attempting to sit on collapsed, causing her to fall to the ground. Marshall claimed injury to her "shoulders, ankles, lower back, and not too much to her knees" from this fall. Marshall then underwent two more surgeries, one for her left knee and one for her left elbow. Marshall was employed by the University at the time of both incidents.

Marshall filed claims for both accidents with the Commission, which she thereafter reopened, alleging permanent partial disability ("PPD") to various parts of her body.[1] The claims were consolidated, and on November 15, 2002, the Commission held a hearing, during which the University contested causal relationship and sought an apportionment of disability.

The Commission then issued an award of compensation, ruling that Marshall sustained 25% PPD "as a result of the injury to the right leg (knee), back, left foot (ankle), left leg (knee), and left arm[.]" The Commission awarded compensation "at the rate of $223.00, payable weekly, beginning January 13, 2002, for a period of 125 weeks."

The University thereafter filed a Motion for Rehearing with the Commission, contending, *inter alia*, that the Commission

---

1. More specifically, Marshall sought 12% PPD to the body as a whole, 24% PPD to the left ankle, 45% PPD to each lower extremity due to knee pathology, and 36% PPD (8% pre-existing) to the left arm. In contrast, the University alleged that the only compensable PPD for the two incidents was 2.5% PPD to the left ankle and 25% PPD to the right knee (both attributable to the May 1999 incident), and 2.5% PPD to the left ankle (attributable to the April 2001 incident).

failed to apportion the 25% PPD finding between the 1999 and the 2001 incidents. The Commission denied the rehearing motion.

The University then filed petitions for review in the Circuit Court for Baltimore County, which consolidated the cases into one action. The University next filed a motion for summary judgment, and after hearing argument, the circuit court, by written order: (1) granted summary judgment to the University, (2) rescinded and annulled the Commission's award, and (3) remanded to the Commission to schedule a hearing in both claims in order to apportion the percentage of PPD among the two accidents. Marshall then filed a timely appeal.

## DISCUSSION

### I.

### Standard Of Review

On appeal, Commission decisions are presumed to be *prima facie* correct. Md.Code (1991, 1999 Repl.Vol., 2004 Cum. Supp.), § 9–745(b)(1) of the Labor & Employment Article ("LE"). The circuit court, however, must still consider whether the Commission: "(1) justly considered all the facts about the accidental personal injury ...; (2) exceeded the powers granted to it under [LE title 9]; or (3) misconstrued the law and facts applicable in the case decided." LE § 9–745(c). Summary judgment is appropriate in a worker compensation appeal to avoid an unnecessary trial if the requirements of Md. Rule 2–501(e) are met.[2] *Dawson's Charter Serv. v. Chin*, 68 Md.App. 433, 440, 511 A.2d 1138 (1986).

In turn, our standard of review is governed by LE section 9–750, which states that "[a] party may appeal from a decision of the circuit court to the Court of Special Appeals as provided

---

2. Md. Rule 2–501(e) states:

The court shall enter [summary judgment] ... if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law....

for other civil cases." Thus, in reviewing a grant of summary judgment, we must determine whether the circuit court's ruling was legally correct. *See Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 476, 860 A.2d 871 (2004) (citations omitted). " 'We review the same information from the record and decide the same issues of law as the trial court.' " *Info. Sys. & Network, Corp. v. Fed. Ins. Co.*, 145 Md.App. 457, 463, 805 A.2d 1141 (citation omitted), *cert. denied*, 372 Md. 430, 813 A.2d 258 (2002).

## II.

### Apportionment Of PPD Percentage

#### A. Compensation Framework

An employee who sustains PPD from a work-related accidental injury is entitled to compensation, which is determined based on the area of the body disabled. *See* LE §§ 9–625, 9–627. PPD to areas of the body not specifically enumerated in section 9–627(a)–(j) falls under the category of "other cases." *See* LE § 9–627(k).

In awarding PPD compensation for "other cases," the Commission must first determine "the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury[.]" LE § 9–627(k)(1). That percentage is then apportioned against the 500 weeks that "the legislature has deemed the whole body to be 'worth' " to calculate the duration of compensation. Gilbert and Humphreys, *Maryland Workers' Compensation Handbook*, 214 (2nd ed.1993, 2001 Cum.Supp.). For example, if a covered employee sustains 10% PPD, compensation would be awarded for 50 weeks (*i.e.*, 10% of 500 weeks). *See id.*

Once the duration of compensation is ascertained, the award amount is calculated according to LE sections 9–628 to 9–630. These sections create a three tier system for PPD benefits, which depends on the number of weeks compensation is awarded. For first tier benefits, or compensation for less than 75 weeks, "the employer or its insurer shall pay the

covered employee compensation that equals one-third of the average weekly wage of the covered employee [3] but does not exceed [a maximum rate, which depends on the year of the accident.]" [4] LE § 9–628.

For second tier benefits, or 75 to 249 weeks compensation, the covered employee is paid "weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage." [5] LE § 9–629.

The third tier, or "serious disability" benefits, addresses compensation for 250 weeks or more. LE section 9–630 states:

> [I]f a covered employee is given an award or a combination of awards **resulting from 1 accidental personal injury** . . . for 250 weeks or more . . . :
>
> (i) the Commission shall increase the award or awards by one-third the number of weeks in the award or awards . . .; and
>
> (ii) the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee, but does not exceed 75% of the State average weekly wage. (Emphasis added.)

---

**3.** The average weekly wage is "the average of the weekly wages of a covered employee: (i) when the covered employee is working on full time; and (ii) at the time of: (1) the accidental personal injury...." Md.Code (1991, 1999 Repl.Vol., 2004 Cum.Supp.), § 9–602 of the Labor & Employment Article ("LE").

**4.** The maximum rates applicable in this case are $94.20 for the May 1999 accident, and $114 for the April 2001 accident. *See* LE § 9–602(d), (e).

**5.** The Department of Labor, Licensing, and Regulation determines the State average weekly wage for each year, and reports that wage to the Commission. *See* LE § 9–603. *See also* Maryland Workers' Compensation Commission, *Maryland Workers' Compensation Rates*, <http://www.wcc.state.md.us/Adjud—Claims/Comp—Rates.html>.

## B. Marshall's PPD Award

Here, the Commission determined that Marshall sustained 25% PPD, and then awarded her compensation for 125 weeks (*i.e.*, 25% of 500 weeks). The Commission ordered that the 125 weeks be paid at the rate of $223.00 per week, one-third of the State average weekly wage for the 2001 calendar year. *See* Maryland Workers' Compensation Commission, *Maximum Rate of Benefits for Calendar Year 2001,* accessible at < http://www.wcc.state.md.us/PDF/Rates/2001.pdf> ("WCC Rates").

On review, the circuit court ruled that the Commission erred because it failed to apportion the PPD percentage between the 1999 and 2001 incidents. We agree, and hold that the statutory scheme detailed above requires the Commission to award PPD compensation at the rates scheduled for the year the accidental injury occurred. Thus, where separate accidental injuries occur, the Commission must determine the PPD percentage caused by **each** accident, and award compensation accordingly.

In construing the applicable sections of the Workers' Compensation Statute, we recognize that

> "the cardinal rule of statutory construction is to ascertain and give effect to the true legislative intent that lies behind the statutory enactment, itself." To determine the legislative intent, we primarily look to "the plain language of the statute, with the words given their ordinary and natural meanings."
>
> \* \* \* \* \* \*
>
> In addition, "all sections of the Act must be read together, in conjunction with one another, to discern the true intent of the legislature."

*Uninsured Employers' Fund v. Pennel,* 133 Md.App. 279, 291, 293, 754 A.2d 1120 (2000) (citations omitted).

For the three tiers of benefits, the compensation amount is calculated using a fraction of the covered employee's average weekly wage, subject to a "ceiling" amount. *See* LE §§ 9–628

to 9–630. The average weekly wage of a covered employee is determined from wages earned "at the time of . . . the accidental personal injury." LE § 9–602(a). The compensation, relates to the time the accidental injury occurred.

Likewise, the "ceiling" for first tier benefits depends solely on the date of accidental injury. *See* LE § 9–628(b)–(e). Section 9–628(b)–(e) creates four first tier benefit rate maximums, delineated by the accidental injury date. For instance, a covered employee cannot be compensated more than $94.20 a week for a "claim arising from events occurring on or after January 1, 1993," whereas an employee injured on or after January 1, 2000, cannot be compensated more than $114 a week. *See id.*

Compensation for second and third tier benefits cannot exceed a set percentage of the State average weekly wage. *See* LE §§ 9–629, 9–630 (one-third and three-fourths, respectively). The State average weekly wage, in turn, is calculated on a **yearly** basis by the Department of Labor, Licensing, and Regulation. *See* LE § 9–603(a).

Finally, LE section 9–604(a) requires the Commission to "compute all compensation awarded under this title in accordance with **the applicable schedule** in this subtitle." (Emphasis added).

▮▮▮ Construing the above sections together, we hold that the Legislature intended that PPD benefits be awarded at rates applicable at the time of the accidental injury. Accordingly, where, as here, two separate accidental injuries occurred, the Commission is required to apportion PPD percentage among the two incidents, and award benefits at the rates applicable at the time of each accident.[6]

---

6. Although Marshall asserts that the Workers' Compensation Statute " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes,' " *see Holy Cross Hosp. v. Nichols*, 290 Md. 149, 162, 428 A.2d 447 (1981) (citation omitted), this does not mean that a construction resulting in a "lower" award amount is untenable. Indeed, the Court of Appeals recently rejected a similar argument in *Ametek, Inc. v. O'Connor*, 364

In this case, the Commission erred when it found a total of 25% PPD stemming from **both** claims, and then awarded benefits at the **2001** rate only. On remand, the Commission must determine the PPD percentage for **each** claim, and award benefits at the rates in effect at the time of the separate accidents. For example, if, on remand, the Commission determines that 10% PPD is attributable to the 1999 incident and 15% PPD is attributable to the 2001 incident, Marshall should be awarded: (1) 50 weeks of compensation at a rate no greater than $94.20 a week, and (2) 75 weeks of compensation at a rate no greater than $223.00 a week, respectively. *See* LE §§ 9–628(d), 9–629. *See* also WCC Rates 2001.

Marshall argues that because the Commission ordered the PPD award to be paid at the 2001 weekly rate, it therefore found that the entire 25% PPD was attributable to the 2001 accident. Such a conclusion cannot reasonably be drawn from the Commission's order. Under the temporary total disability section of the award, the Commission stated that Marshall sustained "accidental injuries . . . on May 21, 1999 and April 10, 2001." The Commission clearly was addressing injuries from **both** incidents.

Moreover, the 25% PPD finding was based on injury to "**the right leg (knee),** back, left foot (ankle), left leg (knee), and left arm[.]" (Emphasis added). The injury to Marshall's right knee undisputedly occurred as a result of the May 1999 accident. In addition, the Commission explicitly stated that only "the disability of the claimant's left leg (knee) and left arm [were] causally related to the accidental injury of April 10, 2001." The Commission's finding of PPD from injury to the listed parts of Marshall's body, then, was not based solely on the May 2001 accident.

---

Md. 143, 159, 771 A.2d 1072 (2001)(holding that when PPD award was increased on judicial review, the employer was entitled to credit for the weeks already paid, rather than for actual amount paid)("It simply will not do to have different rules, depending upon whether it is the claimant or the employer to whom the result is inequitable").

■ We are also unpersuaded by Marshall's argument that, even if the Commission had found that Marshall's PPD was attributable to both the 1999 and the 2001 accidents, it had discretion to order payment of the award at the higher 2001 rate. Marshall cites no legal authority to support this assertion. Furthermore, the Legislature's intention that benefits be awarded at rates in effect at the time the accidental injury occurred refutes the notion of Commission discretion in awarding benefits at higher rates. Indeed, the Commission's own rate schedule acknowledges that benefits are awarded according to the time the injury occurred. *See* WCC Rates 2001 ("the following maximum benefits for death and disability for injuries occurring **on or after January 1, 2001** . . .")(emphasis added).

**JUDGMENT AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR REMAND TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**