883 A.2d 924

Dicie WEATHERLY, Personal Representative of
the Estate of Edward Bernard Scheibel

v.

GREAT COASTAL EXPRESS CO, INC., et al.

No. 1176, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 19, 2005.

358

Michele Gallagher, Baltimore, for appellant.

Steven A. Levin, Columbia, for appellee.

Panel HOLLANDER, KENNEY and BARBERA, JJ.

BARBERA, J.

Maryland's workers' compensation law provides for dependency death benefits to "individuals who were wholly dependent" upon a worker at the time of his or her "death resulting from an accidental personal injury or occupational disease[.]" *See* Md.Code (1991, 1999 Repl.Vol., 2004 Supp.), § 9–681 of the Labor and Employment Article ("LE").[1] The statute caps the dependency benefits at $45,000.00, but allows extended benefits to a "surviving spouse" or "child" who continues to be wholly dependent after $45,000.00 has been paid to that individual. *See* LE § 9–681(c), (d), (g). This case presents the question whether an individual who lived with, but was not married to, the deceased worker qualifies for extended benefits if that individual continues to be wholly dependent after the $45,000.00 cap in benefits is attained.

Appellant, Dicie Weatherly, Personal Representative of the Estate of Edward Bernard Scheibel, resided with, but never married, Mr. Scheibel. After the Workers' Compensation Commission ("Commission") determined that Ms. Weatherly was wholly dependent upon Mr. Scheibel at the time of his death, she was awarded dependency benefits pursuant to LE § 9–681. More than three years later, Great Coastal Express Co., Inc. ("Great Coastal") and Liberty Mutual Fire Insurance Co. (collectively, "appellees") informed Ms. Weatherly that

---

1. Unless otherwise indicated, all statutory citations are to this version of the Labor and Employment Article.

more than $45,000.00 had been paid to her, and her benefits would cease.

Ms. Weatherly initiated proceedings before the Commission, arguing that she was entitled to continued dependency benefits. Appellees responded that Ms. Weatherly's benefits should be terminated on the theory that, under LE § 9–681, she was not entitled to receive more than $45,000.00.

The Commission decided that Ms. Weatherly's benefits were not required to be capped at $45,000.00. Appellees filed a petition for judicial review of the Commission's decision in the Circuit Court for Howard County.

The circuit court reversed the Commission's decision, ruling that LE § 9–681 limits Ms. Weatherly's benefits to $45,000.00 because she is not a surviving spouse. In her appeal to us, Ms. Weatherly contends that the Commission correctly decided that she was entitled to continued benefits and that the circuit court erred when it reversed the Commission's order to that effect.

For the reasons we discuss below, we agree with the circuit court that the Commission erred as a matter of law when it decided that Ms. Weatherly is entitled to benefits exceeding the $45,000.00 cap. We therefore affirm the circuit court's judgment.

## FACTS AND LEGAL PROCEEDINGS

On December 8, 1999, Edward Bernard Scheibel, an employee of Great Coastal, died after sustaining a work-related injury in an automobile accident on Interstate 95 in Howard County. In July 2000, Ms. Weatherly filed a "Dependent's Claim" with the Commission. In an order dated October 30, 2000, the Commission found that Mr. Scheibel died after "sustain[ing] an accidental injury arising out of and in the course of [his] employment" with Great Coastal. The Commission also found that Ms. Weatherly, who evidently resided with Mr. Scheibel for 30 years before his death, was "wholly dependent" upon him at the time of his injury and death.

The Commission determined that Mr. Scheibel earned an average weekly wage of $720.40. The Commission therefore ordered appellees to pay $5,000.00 toward Mr. Scheibel's funeral expenses and to pay Ms. Weatherly "compensation for her own use and benefit at the rate of $481.00, payable weekly, beginning December 8, 1999 and amounting to $45,000.00 and subject to further payments as provided in [LE § ] 9–681 . . . so long as [Ms. Weatherly] continues to be wholly dependent[.]"

Appellees requested a rehearing on whether Ms. Weatherly was wholly dependent, and they filed a motion for modification of the order. Appellees did not challenge that aspect of the Commission's order stating that Ms. Weatherly's benefits could exceed $45,000.00 "subject to further payments as provided in" the statute.

The Commission denied appellees' request for rehearing and motion for modification. Appellees then filed a petition for judicial review of the Commission's orders in the Circuit Court for Howard County, challenging the Commission's finding of total dependency. In February 2002, the circuit court entered summary judgment in favor of Ms. Weatherly and affirmed the Commission's orders.

Nearly two years after the initial award of benefits, Ms. Weatherly filed issues with the Commission. The parties stipulated that Mr. Scheibel's average weekly wage should have been determined to be $764.32, not $720.40. In an order dated October 3, 2002, the Commission corrected its earlier determination of Mr. Scheibel's average weekly wage and amended its benefits award by directing that appellees pay Ms. Weatherly $510.00 (rather than $481.00) per week.

On September 11, 2003, the Commission ordered appellees to pay Ms. Weatherly's attorneys' fees of $10,000.00. The Commission ordered that, for 85 weeks, $117.65 of her weekly benefits would be used to effectuate that award. At the conclusion of that time period, Ms. Weatherly's weekly benefits would resume at $510.00.

In a letter dated December 3, 2003, counsel for appellees informed Ms. Weatherly that her benefits would be terminated. The letter stated that she had been paid "in excess of $50,000.00 more than [the $45,000.00] she was entitled to under [LE] § 9–681[ ]."[2] Appellees took the position that LE § 9–681 capped dependency benefits at $45,000.00, and that, because Ms. Weatherly had not been married to Mr. Scheibel, she could not seek additional benefits.

Ms. Weatherly responded to appellees' letter by requesting an emergency hearing before the Commission. On January 30, 2004, the Commission held a hearing on the question whether appellees were obligated to pay Ms. Weatherly benefits in excess of $45,000.00. Ms. Weatherly argued that appellees waived the argument that her dependency benefits were capped at $45,000.00, and that, in any event, the statute did not cap her benefits at $45,000.00.

In an order dated February 2, 2004, the Commission found that Ms. Weatherly remained wholly dependent upon Mr. Scheibel. The Commission ordered appellees to "pay unto [Ms.] Weatherly, dependency benefits at the rate of $510.00" per week, retroactive to December 3, 2003, pursuant to LE § 9–681.[3] The Commission did not state why it believed Ms. Weatherly was eligible for the extended benefits.

On February 25, 2004, appellees filed in the Circuit Court for Howard County a petition for judicial review of the Commission's February 2, 2004 order. That same day, appellees filed a motion to stay the Commission's award, a motion for summary judgment, and a motion to shorten time for Ms. Weatherly to respond to the motion for summary judgment.

---

2. The record does not reflect exactly when appellees' payments to Ms. Weatherly exceeded $45,000.00.

3. The Commission's order stated that benefits should be paid to Ms. Weatherly retroactive to *September* 3, 2003. All parties agree, however, that this was a typographical error and that the correct date is December 3, 2003.

Ms. Weatherly opposed appellees' motions and requested a hearing. She filed her own motion for summary judgment, arguing, *inter alia*, that appellees were barred from contesting the Commission's order by application of the doctrines of res judicata and collateral estoppel. She also filed a motion for attorneys' fees and costs.

While the petition for judicial review was pending, Ms. Weatherly initiated another emergency hearing with the Commission. She sought enforcement of the Commission's February 2, 2004 order and requested attorneys' fees. The Commission held a hearing and, on March 31, 2004, ordered appellees to pay Ms. Weatherly "a 20% penalty on the accrued benefits paid late per the Order of February 2, 2004; and pay unto [Ms. Weatherly's counsel] an attorney fee in the amount of $500.00."

Appellees timely filed in the Circuit Court for Howard County a petition for judicial review of that order. Ms. Weatherly moved for summary judgment on the ground that the Commission had jurisdiction to award attorneys' fees. She also sought attorneys' fees in the judicial review action and moved to consolidate the two cases then pending in the circuit court.

On June 11, 2004, all pending motions came on for a hearing. The court consolidated the cases and, after hearing argument from counsel, orally rendered its ruling on each petition.

The court determined that LE § 9–681 limited Ms. Weatherly's benefits to a maximum of $45,000.00. The court viewed LE § 9–681 as expressing the General Assembly's intent to limit death benefits payable to a claimant to $45,000.00, unless the claimant is "a surviving spouse" or is among a "certain class[ ] of children."

The court rejected Ms. Weatherly's res judicata and collateral estoppel arguments. The court also mentioned that it had not heard any argument concerning whether appellees were entitled to reimbursement of funds they paid to Ms. Weatherly in excess of $45,000.00. On this issue, the court

stated that it likely would not entertain that argument and implied that it would not be inclined to order reimbursement.[4]

With regard to appellees' petition for judicial review of the Commission's February 2, 2004 order, the court granted appellees' motion for summary judgment and denied Ms. Weatherly's motion, thereby reversing the Commission's order. The court granted Ms. Weatherly's summary judgment motion on the petition from the Commission's March 31, 2004 order, which had assessed a penalty and attorneys' fees against appellees, thereby affirming that order. Appellees have not appealed that ruling.

A written order embodying the court's ruling was docketed on June 25, 2004. Ms. Weatherly noted a timely appeal, raising the following questions:

I. Whether the trial court erred in denying Ms. Weatherly's motion for summary judgment on the grounds of res judicata and collateral estoppel.

II. Whether the trial court erred in ruling that the Commission erred in its interpretation of LE § 9–681, and thereby erred in reversing the Commission's order granting Ms. Weatherly benefits above the $45,000.00 cap.

III. Whether the trial court erred in denying Ms. Weatherly's motion for attorneys' fees on the ground that appellees had filed a frivolous appeal from, and sought a stay of, the Commission's order.

We shall add facts as they become pertinent to our discussion.

## STANDARD OF REVIEW

Our review of workers' compensation proceedings is governed by § 9–745 of the Labor and Employment Article, which in pertinent part provides:

---

4. Appellees do not argue on appeal that they are entitled to reimbursement of the monies paid in excess of $45,000.00.

(b) *Presumption and burden of proof.*—In each court proceeding under this title:

(1) the decision of the Commission is presumed to be prima facie correct; and

(2) the party challenging the decision has the burden of proof.

(c) *Determination by court.*—The court shall determine whether the Commission:

(1) justly considered all of the facts about the accidental personal injury . . .;

(2) exceeded the powers granted to it under this title; or

(3) misconstrued the law and facts applicable in the case decided.

\* \* \*

(e) *Disposition.*—(1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.

(2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

Md.Code (1991, 1999 Repl.Vol.), § 9–745 of the Labor and Employment Article.

■ "[I]f the requirements of [Maryland] Rule 2–501[ ] are met," a circuit court may enter summary judgment in an appeal from a decision by the Commission. *Marshall v. Univ. of Md. Med. Sys. Corp.,* 161 Md.App. 379, 382, 869 A.2d 391 (2005). Pursuant to Maryland Code (1991, 1999 Repl.Vol.), § 9–750 of the Labor and Employment Article, we review the court's ruling as we would rulings in other civil cases. 161 Md.App. at 382–83, 869 A.2d 391. "We [therefore] review the grant of summary judgment *de novo." Johnson v. Mayor & City Council of Baltimore,* 387 Md. 1, 5, 874 A.2d 439 (2005).

*See also Marshall,* 161 Md.App. at 383, 869 A.2d 391. "Summary judgment is only appropriate when, upon review of the facts and inferences therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Clarence W. Gosnell, Inc. v. Hensley,* 156 Md.App. 224, 231, 846 A.2d 469 (2004). *See also* Md. Rule 2–501(f).

■ When asked, as we are in the present case, to interpret a statute, we recognize that "[t]he question before us is purely a legal one," *Johnson,* 387 Md. at 5, 874 A.2d 439, so our review is *de novo.* We have " 'broad authority and may reverse the Commission's decision when it is based on an erroneous conception of the law.' " *Chaney Enters. Ltd. P'ship v. Windsor,* 158 Md.App. 1, 25, 854 A.2d 233 (2004) (quoting *Bd. of County Comm'rs for Frederick County v. Vache,* 349 Md. 526, 537, 709 A.2d 155 (1998)).

## DISCUSSION

### *Res Judicata and Collateral Estoppel*

Ms. Weatherly contends that the circuit court erred in denying her motion for summary judgment, because appellees should be precluded by the doctrines of res judicata and collateral estoppel from asserting the applicability of the $45,000.00 cap on dependency benefits. Ms. Weatherly states that appellees did not raise the cap issue either in prior proceedings before the Commission or in their 2002 petition for judicial review. Citing LE § 9–736, Ms. Weatherly asserts that appellees should be "estopped" from arguing that her benefits should be capped at $45,000.00.

■ Before addressing these contentions, we clarify what related issues are not before us. Although Ms. Weatherly's first question presented in her brief characterizes her contention as implicating only res judicata and collateral estoppel, she also asserts, in the argument portion of her brief, a theory under the doctrine of equitable estoppel. During closing

argument at the hearing on the parties' respective motions for summary judgment, however, Ms. Weatherly's counsel stated her agreement with the court's reasoning that equitable estoppel does not apply in this case. Counsel stated: "The court has a good point on equitable estoppel and I would concede with that point on the court but I would ask this court realistically to look at the issues as presented as, as res judicata, collateral estoppel and then summary judgment on the definition of the statutory code." This express statement by Ms. Weatherly, through her counsel, constitutes a waiver of her present argument concerning equitable estoppel, and we decline to consider it. *See Williams v. Maryland Dep't of Human Res.*, 136 Md.App. 153, 176, 764 A.2d 351 (2000) (stating that the appellant was precluded from challenging on appeal the grant of summary judgment in the appellees' favor, after having acquiesced to summary judgment before the circuit court).

We likewise decline to consider Ms. Weatherly's argument that appellees are judicially estopped from asserting the cap issue. "[J]udicial estoppel, also known as the doctrine against inconsistent positions, and estoppel by admission, prevents a party who successfully pursued a position in a prior legal proceeding from asserting a contrary position in a later proceeding." *Chaney*, 158 Md.App. at 40, 854 A.2d 233 (internal quotation marks and citations omitted).

Ms. Weatherly did not raise judicial estoppel in the circuit court, and raises it for the first time in her reply brief. For two reasons, then, the argument is not properly before us. *See* Md. Rule 8–131(a); *Beck v. Mangels*, 100 Md.App. 144, 149, 640 A.2d 236 (1994) (stating that "Md. Rule 8–504(a)(5) requires a party to present 'argument in support of the party's position,'" and "'to present *and argue* all points of appeal *in [her] initial brief*'") (citations omitted) (some emphasis added), *cert. dismissed*, 337 Md. 580, 655 A.2d 370 (1995).

We now consider the arguments that are properly before us. Ms. Weatherly argues that, by operation of the doctrines of res judicata and collateral estoppel, appellees are foreclosed

from challenging the Commission's award to her of benefits above the $45,000.00 cap. Appellees respond that neither doctrine bars their claims.

■■■ The doctrines of res judicata and collateral estoppel are two "branches of a doctrine known as estoppel by judgment[.]" *Klein v. Whitehead*, 40 Md.App. 1, 13, 389 A.2d 374, *cert. denied*, 283 Md. 734 (1978). Res judicata and collateral estoppel have the same function: " 'to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " *Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 387, 761 A.2d 899 (2000) (citation omitted). Yet the doctrines are distinct from one another. *Id.* at 387–88, 761 A.2d 899.

The Court of Appeals has said:

> *Res judicata* literally means "a thing adjudicated," and generally indicates "[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit."

*Lizzi v. Washington Metro. Area Transit Auth.*, 384 Md. 199, 206, 862 A.2d 1017 (2004) (citation omitted), *cert. denied*, —— U.S. ——, 125 S.Ct. 2919, 162 L.Ed.2d 297 (2005).

■■■ Often referred to as "claim preclusion," res judicata applies when the following conditions are met:

> [T]he parties to a second suit are the same or in privity with the parties to a first suit; the first and second suits present the same claim or cause of action; and there was a final judgment rendered on the merits in the first suit, by a court of competent jurisdiction.

*Boyd v. Bowen*, 145 Md.App. 635, 655, 806 A.2d 314 (2002). *Accord Colandrea*, 361 Md. at 389, 761 A.2d 899; *Hughes v. Insley*, 155 Md.App. 608, 611, 845 A.2d 1 (2003), *cert. denied*, 381 Md. 675, 851 A.2d 594 (2004).

When these three elements are present, "the first claim is merged into the judgment and bars the second claim." *Boyd,* 145 Md.App. at 655, 806 A.2d 314. *See also Hughes,* 155 Md.App. at 611, 845 A.2d 1. Furthermore,

[b]ecause a "claim" encompasses all rights the plaintiff has to remedies against the defendant respecting all or any part of the transaction or series of connected transactions out of which the claim arises, the doctrine of *res judicata* bars subsequent litigation not only of what was decided in the original litigation of the claim but also of what *could have been decided* in that original litigation.

*Boyd,* 145 Md.App. at 656, 806 A.2d 314.

The doctrine of collateral estoppel, also referred to as "issue preclusion," is closely related to res judicata. *Colandrea,* 361 Md. at 387, 761 A.2d 899. Collateral estoppel applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment[ ] and the determination is essential to the judgment." *Id.* (internal quotation marks and citations omitted). If these conditions are met, "the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* (internal quotation marks and citations omitted). *See also Boyd,* 145 Md.App. at 657, 806 A.2d 314 (stating that, "[u]nder the doctrine of collateral estoppel, . . . a determination of fact that was actually litigated in a first suit between parties is conclusive in a second suit, on a different cause of action, between the same parties or their privies").

To invoke the doctrine of collateral estoppel,

"the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum."

*Thacker v. City of Hyattsville,* 135 Md.App. 268, 288–89, 762 A.2d 172 (2000) (quoting *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998)), *cert. denied,* 363 Md. 206, 768 A.2d 55 (2001).

Before addressing whether either res judicata or collateral estoppel applies in this case, we note that, in Maryland, it is not entirely clear whether these doctrines apply at all to decisions of the Commission. *See Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.,* 323 Md. 641, 658–59 n. 13, 594 A.2d 1115 (1991) (stating that "[i]t is unclear under Maryland law to what extent principles of res judicata and collateral estoppel apply to administrative decisions"); *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 549, 555 A.2d 502 (1989) (assuming, *arguendo,* that res judicata principles apply to the Commission's decisions, collateral estoppel would not assist the party asserting it); *Mackall v. Zayre Corp.,* 293 Md. 221, 227, 443 A.2d 98 (1982) (stating that the court would "assume, without deciding, that under the circumstances [presented in the case], res judicata or collateral estoppel principles are applicable to ... the [Commission]," because the doctrines would not assist the party asserting them); *Trojan Boat Co. v. Bolton,* 11 Md.App. 665, 668, 276 A.2d 413 (1971) (stating that it is unnecessary to decide whether res judicata applies to proceedings before the Commission, because the issue presented could not have been raised in an earlier appeal from a decision of the Commission). *But see Batson v. Shiflett,* 325 Md. 684, 701–03, 602 A.2d 1191 (1992) (stating that an administrative decision will be given preclusive effect when (1) the agency was acting in a judicial capacity, (2) the issues on appeal were actually litigated before the agency, and (3) resolution of those issues was necessary to the agency's decision); *State of Md. Cent. Collection Unit v. Kossol,* 138 Md.App. 338, 344, 771 A.2d 501 (2001) (stating that the Court agrees with the proposition in *Batson* ); *Dep't of Human Res. v. Thompson,* 103 Md.App. 175, 195–96, 652 A.2d 1183 (1995) (recognizing that the *Batson* Court identified the "test for determining when an agency decision is entitled to preclusive effect").

Scholarly materials also seem to differ on the subject. *Compare* II Richard J. Pierce, Jr., Administrative Law Treatise § 13.3 (2002) (stating that "[t]he policy in favor of repose that underlies application of res judicata, or claim preclusion, to judicial decisions applies with equal strength to agency adjudications"), *and* A. Larson, 7 Workers's Compensation Law § 127.07[2] (2000) (concepts of res judicata do apply to decisions of workers' compensation commissions), *with* Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook, § 17.8 (2nd. Ed.1993) (stating that "[r]es judicata is not, generally speaking, applicable to awards made by the Commission").[5]

As the Court of Appeals and this Court have done in the past, we shall assume, without deciding, that both collateral estoppel and res judicata apply to Commission decisions. Even so, neither doctrine assists Ms. Weatherly.

█ We first consider collateral estoppel. Whether Ms. Weatherly has the entitlement to receive dependency benefits in excess of $45,000.00 was a question not litigated until appellees ceased making payments to Ms. Weatherly and she requested an emergency hearing on the issue. Because the issue was not "actually determined," in a prior proceeding, Ms. Weatherly could not successfully rely upon that doctrine to bar appellees' claim. The court properly rejected the argument as a basis for summary judgment.

█ The court was also correct to deny Ms. Weatherly summary judgment on the ground of res judicata. This doctrine applies only if appellees did not raise, but could have raised, the issue of Ms. Weatherly's entitlement to benefits in

---

5. Some of our sister jurisdictions apply the doctrine of res judicata, in one form or another, to decisions of their workers' compensation boards. *See Rusty's Welding Serv., Inc. v. Gibson,* 29 Va.App. 119, 510 S.E.2d 255, 259 (1999); *Hebden v. Workmen's Comp. Appeal Bd.,* 534 Pa. 327, 632 A.2d 1302, 1304–05 (1993); *Hubbard v. SWCC & Pageton Coal Co.,* 170 W.Va. 572, 295 S.E.2d 659, 664–65 (1981); *Taylor v. Hatzel & Buehler,* 258 A.2d 905, 908 (Del.1969); *Wall v. C.Y. Thomason Co.,* 232 S.C. 153, 101 S.E.2d 286, 288 (1957).

excess of the cap in an earlier proceeding before the Commission or the circuit court.

The parties were not involved in litigating whether Ms. Weatherly was entitled to benefits in excess of $45,000.00 until Ms. Weatherly filed issues with the Commission regarding benefits in excess of $45,000.00. Before then, the proceedings focused on whether Ms. Weatherly was wholly dependent upon Mr. Scheibel, whether the appropriate amount of weekly benefits was awarded, and whether she was entitled to attorneys' fees in that litigation.

Even if appellees could have raised, at one of these proceedings, the question whether Ms. Weatherly is entitled to benefits above the $45,000.00 cap, we conclude that res judicata does not bar current litigation of that issue. It has been said that the doctrine of res judicata is limited by the application of Maryland Code (1957, 1964 Repl.Vol., 1970 Cum.Supp.), Article 101, § 40(c), the predecessor to LE § 9–736(b). *See Subsequent Injury Fund v. Baker*, 40 Md.App. 339, 345, 392 A.2d 94 (1978). LE § 9–736(b) provides:

(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:

(i) the date of the accident;

(ii) the date of disablement; or

(iii) the last compensation payment.

We discussed former § 40(c) in *Baker*, 40 Md.App. at 345–46, 392 A.2d 94. Our discussion in *Baker* informs our analysis in the present case, so we shall discuss it at some length.

In *Baker*, Carlton Baker sustained an accidental injury during the course of his employment. While recovering, doctors learned that Baker had a form of bone cancer, which

condition antedated his accidental injury. The Subsequent Injury Fund (the "Fund") was impleaded as a party to the case, and the Commission awarded Baker $45,000.00 after it found him permanently and totally disabled. The Commission also found that Baker's injury caused him to sustain a 40% loss of the use of his right hand, and ordered his employer/insurer to pay $6,667.00 of the award, leaving the Fund to cover the remainder. 40 Md.App. at 340, 392 A.2d 94.

The employer/insurer appealed the Commission's decision to the Circuit Court for Baltimore County. The Fund, however, did not file its own appeal or participate in the employer/insurer's appeal. The circuit court remanded the case to the Commission to reconsider its award. *Id.* at 340–41, 392 A.2d 94.

On remand, the Fund raised new issues with the Commission and argued that it was "not liable for a disability caused by the deterioration of a pre-existing impairment which arises after a subsequent compensable injury[.]" *Id.* at 341, 392 A.2d 94. The Commission reaffirmed its earlier award against the employer/insurer, but eliminated its award against the Fund. Baker appealed, and the circuit court restored the Commission's earlier award against the Fund. The circuit court concluded that, because the fund did not appeal the original award, as had the employer/insurer, that order was res judicata, and barred the Fund from litigating the issue. *Id.*

We reversed. We saw the issue as whether res judicata precluded the Commission from reopening and modifying its original award to Baker. *Id.* at 340–42, 392 A.2d 94. We recognized that it is unclear whether, under Maryland law, principles of res judicata apply to decisions of administrative agencies. We explained that, even if res judicata is applicable to Commission decisions, former Article 101, § 40(c) limits the effect of res judicata because the statute "not only gives the Commission continuing jurisdiction over each case, it also invests the Commission with blanket power to make such changes as in its opinion may be justified." *Id.* at 344–45, 392 A.2d 94. *See also Vinci v. Allied Research Assocs., Inc.,* 51

Md.App. 517, 522, 444 A.2d 462 (1982) (noting that former Article 101, " § 40(c) gives the Commission a revisionary power" that allows it to reconsider and revise its earlier decisions "at its discretion"); GILBERT & HUMPHREYS, *supra,* § 17.8, at 350 (stating that "[i]f *res judicata* is applicable at all to the Commission's rulings, it is severely limited by [LE § 9–736] which provides that the Commission has continuing powers and jurisdiction over each claim"). *But cf. Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 519, 331 A.2d 55 (1975) (noting that "the doctrine of res judicata has been held not to apply to decisions of administrative agencies," but concluding that the Workmen's Compensation Commission's decision that the claimant "was an 'independent contractor' was conclusive and not subject to collateral attack by the [Criminal Injuries Compensation] Board").

In *Baker,* we characterized former § 40(c) as "one of the broadest re-opening statutes" in the country because it "not only gives the Commission continuing jurisdiction over each case, it also invests the Commission with blanket power to make such changes as in its opinion may be justified." 40 Md.App. at 345, 392 A.2d 94. We said: "It is settled law in this State that the Commission has the power to re-open a case even for consideration of questions previously decided." *Id.* at 346, 392 A.2d 94. Consequently, res judicata "is necessarily limited in its effect by" § 40(c). *Id.* at 345, 392 A.2d 94.

We also stated in *Baker* that nothing in former § 40(c) "preclude[s] the Commission from re-opening a case in which it has mistakenly interpreted the law." *Id.* at 346, 392 A.2d 94. After noting that the circuit court did not make an explicit ruling on the legal issues involved in the case when it remanded to the Commission, we held that the Commission had the authority to re-open the case to decide the issues presented for the first time by the Fund and the insurer/employer. *Id.* at 348, 392 A.2d 94.

We briefly discussed *Baker* in *Vinci, supra.* We observed that, "[i]n a real sense," former § 40(c) "gives the Commission a revisionary power akin to that available to courts under"

former Maryland Rule 625 (the predecessor to Maryland Rule 2–535) and § 6–408 of the Courts and Judicial Proceedings Article, "but without the thirty-day limitation." 51 Md.App. at 522, 444 A.2d 462. We continued: "As *res judicata* would not preclude a court from exercising its authority under § 6–408 or Rule [2–535], so it would not preclude the Commission from exercising its authority under § 40(c). The Commission is not 'irrevocably bound' by its earlier findings." *Id.*

■ *Baker* and *Vinci* lead us to conclude that, even if res judicata otherwise applies to Commission decisions, LE § 9–736(b) limits its effect upon prior findings and orders of the Commission.[6] This conclusion, moreover, comports with common sense. Res judicata bars the relitigation of issues that have been, or *could have been,* decided in an earlier proceeding. Application of res judicata to cases like the present one would render LE § 9–736(b) nugatory. The doctrine would prevent relitigation of matters before the Commission that have previously been decided, or that could have been decided, by the Commission. LE § 9–736(b), however, expressly confers upon the Commission the authority to do precisely what the doctrine of res judicata would prevent.

Further support for our conclusion that res judicata does not bar appellees' challenge to the Commission's award of continued benefits under LE § 9–681 is found in LE § 9–681 itself. LE § 9–681(j) provides:

The Commission has continuing jurisdiction to:

(1) determine whether a surviving spouse or child has become wholly or partly self-supporting;

(2) suspend or terminate payments of compensation; and

(3) reinstate payments of compensation that have been suspended or terminated.

---

6. There are limits to the broad authority conferred upon the Commission by LE § 9–736(b). *See, e.g., Ratcliffe v. Clarke's Red Barn,* 64 Md.App. 293, 300–01, 494 A.2d 983 (1985) (stating that former § 40(c) does not empower the Commission either to overrule a judgment entered by a court following an appeal from a Commission decision or to confer jurisdiction upon a court).

By its express wording, LE § 9–681(j) permits the Commission to revisit previously decided awards of dependency benefits. It seems readily to follow that res judicata, even if otherwise applicable to Commission decisions, does not apply to bar challenges to an award, even if the challenge could have been raised at an earlier time.

In sum, the question whether appellees *could have* raised the issue of the statutory cap in an earlier proceeding before the Commission is of little concern. That they *could have* raised the issue at an earlier proceeding does not preclude them from challenging the dependency benefits award to Ms. Weatherly, because the Commission possesses the continuing jurisdiction to "modify any finding or order," LE § 9–736(b)(2), and, in particular, to revisit dependency benefits awards, LE § 9–681(j). In this case, the Commission revisited the original award of dependency benefits to Ms. Weatherly, to decide whether LE § 9–681 authorized her to continue to receive benefits beyond the statutory $45,000.00 cap, even though she is not a "surviving spouse." Res judicata did not bar appellees from arguing, for the first time at that juncture, that Ms. Weatherly is not legally entitled to seek benefits exceeding the statutory cap.

### Interpretation of LE § 9–681

■■■ We now consider whether the circuit court correctly interpreted LE § 9–681. That section is entitled "Wholly dependent individuals" and provides in pertinent part:

(a) *In general.*—If there are individuals who were wholly dependent on a deceased covered employee at the time of death resulting from an accidental personal injury or occupational disease, the employer or its insurer shall pay death benefits in accordance with this section.

\* \* \*

(c) *Duration of payment—In general.*—Except as otherwise provided in this section, the employer or its insurer shall pay the weekly death benefit:

(1) for the period of total dependency; or

(2) until $45,000 has been paid.

(d) *Same—Surviving spouse who remains wholly dependent.*—If a surviving spouse who was wholly dependent at the time of death continues to be wholly dependent after $45,000 has been paid, the employer or its insurer shall continue to make payments to the surviving spouse at the same weekly rate during the total dependency of the surviving spouse.

(e) *Same—Surviving spouse who becomes self-supporting.*—(1) If a surviving spouse who is wholly dependent at the time of death becomes wholly self-supporting before $45,000 has been paid, the employer or its insurer shall continue to pay death benefits until $45,000 has been paid.

\* \* \*

(f) *Same—Surviving spouse who remarries.*—(1) Except as provided in paragraph (2) of this subsection, if a surviving spouse who is wholly dependent remarries, payment to the surviving spouse shall stop on the date of remarriage, even if $45,000 has not been paid.

\* \* \*

(g) *Same—Child who remains wholly dependent.*—If a surviving child continues to be wholly dependent after the total amount of $45,000 has been paid, the employer or its insurer shall continue to make payments at the same weekly rate during the total dependency of the surviving child.

(h) *Same—Child who becomes self-supporting.*—Except as provided in subsection (i) of this section, if a child who is wholly dependent at the time of death becomes wholly or partly self-supporting, the employer or its insurer shall continue to pay death benefits until $45,000 has been paid.

(i) *Same—Child who becomes 18.*—(1) Except as provided in paragraphs (2) and (3) of this subsection, the employer or its insurer shall continue to make payments to, or for the benefit of, a surviving child until the child reaches 18 years of age.

\* \* \*

(j) *Continuing jurisdiction of Commission.*—The Commission has continuing jurisdiction to:

> (1) determine whether a surviving spouse or child has become wholly or partly self-supporting; . . . .

The question before us is whether, under LE § 9–681, a person who is not a surviving spouse or child of a deceased covered employee, but who was wholly dependent upon the deceased employee at the time of the employee's death and continues to be wholly dependent, is entitled to dependency benefits in excess of $45,000.00. Ms. Weatherly finds ambiguity in the statute's provisions concerning extended benefits. She contends that it is unclear whether the employer/insurer is liable "for the payment of benefits [beyond $45,000.00] to wholly dependent individuals other than a spouse and child." She does not argue that she should be considered a "spouse" of Mr. Scheibel. She argues, instead, that the entire statutory scheme and its benevolent purposes dictate the conclusion that there is no $45,000.00 "cap" on benefits payable to a non-spouse of a deceased covered employee who continues to be wholly dependent.

Appellees do not dispute that Ms. Weatherly was wholly dependent upon Mr. Scheibel at the time of his death, remained wholly dependent through the time $45,000.00 was paid to her, or even that she is wholly dependent today. They argue, however, that LE § 9–681 unambiguously provides that only spouses and children of the decedent are eligible to receive benefits beyond $45,000.00, and Ms. Weatherly, as a non-spouse, is ineligible.

Our analysis of this issue is guided by the following familiar language, restated recently by the Court of Appeals in *Johnson,* 387 Md. at 11, 874 A.2d 439:

> We remind ourselves that the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. *O'Connor v. Baltimore County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004). As noted by this Court in *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995):

The first step in determining legislative intent is to look at the statutory language and "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones [v. State,* 336 Md. 255, 261], 647 A.2d 1204 [ (1994) ].

*See also Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997) (noting that our goal is to give statutes their "most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used").

(Some citations omitted).

In ascertaining the General Assembly's intent, we must examine the entire statutory scheme, " 'as opposed to scrutinizing parts of a statute in isolation.' " *Martin v. Beverage Capital Corp.,* 353 Md. 388, 399, 726 A.2d 728 (1999) (citation omitted). *See also Johnson,* 387 Md. at 11, 874 A.2d 439 (reviewing "the context" of a provision in the Workers' Compensation Act "and the [Act's] general statutory purpose" as an aid "in determining the Legislature's intent"). "To effectuate the legislative intent, we may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Chaney,* 158 Md.App. at 25–26, 854 A.2d 233 (internal quotation marks and citation omitted).

■ The purpose of the Act is to protect[ ] employees, employers, and the public alike. To be sure, the Act maintains a no-fault compensation system for employees and their families.... At the same time, however, the Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of "caring for the helpless human wreckage found [along] the trail of modern industry."

*Johnson,* 387 Md. at 12–13, 874 A.2d 439 (citation omitted). *Accord Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 474, 784 A.2d 569 (2001).

 Section 9–102 of the Labor and Employment Article mandates that, when called upon to interpret the statute, we must construe it so as "to carry out its general purpose." Moreover, " '[t]he Workers' Compensation statute should be liberally construed so that any ambiguity, uncertainty or conflict is resolved in favor of the claimant, in order to effect the statute's benevolent purposes.' " *Martin,* 353 Md. at 400, 726 A.2d 728 (quoting *Linder Crane Serv. Co. v. Hogan,* 86 Md.App. 438, 443, 586 A.2d 1290 (1991) (alteration in original)). The principle that ambiguity in the statute is resolved in favor of the claimant, however, "does not mandate the payment of benefits beyond that authorized by the Act's provisions and purpose." *Morris v. Bd. of Ed. of Prince George's County,* 339 Md. 374, 384, 663 A.2d 578 (1995).

No reported decision of the Court of Appeals or this Court has addressed the question whether the General Assembly intended to grant benefits above $45,000.00 to *any* claimant who remains wholly dependent under LE § 9–681. Yet, several decisions are helpful in setting the stage for our analysis.

*Martin, supra,* involved "whether the phrase 'continues to be wholly dependent,' as found in [the Act] refers to an ongoing dependency on the deceased worker's wages or the generally lesser amount of workers' compensation benefits." 353 Md. at 393, 726 A.2d 728 (footnote omitted). "[T]here is a two-step process for determining the initial receipt and continuation of workers' compensation death benefits." *Id.* at 400, 726 A.2d 728. The first step requires a determination whether the claimant is wholly dependent under Maryland Code (1991, 1999 Repl.Vol.), § 9–679 of the Labor and Employment Article, and is therefore "entitled to receive benefits up to the $45,000.00 maximum" pursuant to LE § 9–681(a) through (c). *Id.* The second step, which arises once the $45,000.00 maximum has been paid, requires that a surviving *spouse* seeking further benefits "prove that he or she 'continues to be wholly

dependent' under [LE] § 9–681(d)." *Id.* at 400–01, 726 A.2d 728.

There is no controversy in the present case regarding step one. In 2000 the Commission found Ms. Weatherly wholly dependent upon Mr. Scheibel and ordered appellees to pay benefits to her "amounting to $45,000.00 and subject to further payments as provided in [LE § ] 9–681 ... so long as [Ms. Weatherly] continues to be wholly dependent[.]" The controversy concerns step two: whether Ms. Weatherly, though not a surviving spouse or child of Mr. Scheibel, is entitled to prove that she "continues to be wholly dependent" on him and therefore should continue to receive dependency benefits.

The opinion of the Court of Appeals in *Ryder Truck Lines, Inc. v. Kennedy,* 296 Md. 528, 463 A.2d 850 (1983), instructs us about step two. In that case, Ernest John Grass, Jr. ("Grass"), was lawfully married to one woman but was living with another, Donna Kennedy ("Kennedy") and her two minor children (one of whom he had fathered), when he died in an automobile accident in Virginia. Grass's wife sought and received survivors' benefits from the Industrial Accident Commission of the Commonwealth of Virginia ("Virginia Commission"). Later, both she and Kennedy filed claims with the Commission in Maryland. The Commission awarded benefits to Kennedy but denied benefits to Grass's wife. The Commission also refused to offset the award to Kennedy based on the award given by the Virginia Commission to Grass's wife. The circuit court affirmed. The Court of Appeals granted *certiorari* before a decision by this Court, and affirmed. *Id.* at 529–30, 540, 463 A.2d 850.

The question before the *Kennedy* Court was whether Kennedy could receive benefits (*i.e.,* the first step identified by the *Martin* Court). *Id.* at 530, 463 A.2d 850. The Court held that the Act "prohibits the same dependent who recovers a compensation award in a foreign state from recovering total compensation in Maryland for the same injury greater than is provided in [the Act]." *Id.* at 539, 463 A.2d 850.

■ In reaching this conclusion, the Court discussed various provisions of the Act. The Court noted that "various persons who are not spouses or children" may receive workers' compensation benefits in accordance with the Act. *See id.* at 532–33 n. 4, 463 A.2d 850, and cases cited therein. They may do so because, during the first step of the dependency process, dependency, not a marital or another familial relation, "is the decisive factor in determining who will receive a compensation award." *Id.* at 532–33, 463 A.2d 850.

The *Kennedy* Court did not have before it the issue we decide in this case. Even so, the Court stated that former Maryland Code (1957, 1979 Repl.Vol.), Article 101, § 36(8) (the predecessor to LE § 9–681), placed a cap of $45,000.00 on benefits paid to persons determined to be wholly dependent. *Id.* at 533, 463 A.2d 850. Citing former § 36(8)(a), the Court stated that, after $45,000.00 had been paid, "a surviving wife or husband who remains wholly dependent may continue to receive payments at the same rate." *Id.* The Court also pointed out "that *other states recognizing actual dependency also provide for potentially extended compensation for spouses or children while not allowing other dependents* to receive more than the basic award." *Id.* at 533–34 n. 5, 463 A.2d 850 (emphasis added). That observation at least suggests a recognition by the Court that non-spouses are not entitled to seek benefits above the statutory cap.

Even without the benefit of the *Kennedy* Court's intimations on the issue, we have no difficulty concluding that the language of LE § 9–681 is unambiguous. Under subsection (a), *any* claimant who was "wholly dependent on the deceased covered employee at the time of death from an accidental personal injury or occupational disease" is entitled to receive dependency benefits. Under subsection (c), the benefits are "capped" at $45,000.00, except in certain circumstances identified in LE § 9–681(d) through (i). Those subsections, however, delineate instances when a *spouse* or *child* of the deceased covered employee may be eligible to receive continuing benefits above $45,000.00. By placing a cap on benefits for any claimant at $45,000.00, but expressly providing for circum-

stances under which a *spouse* or *child* of the deceased covered employee is eligible to receive benefits above the $45,000.00 cap, the General Assembly necessarily excluded all claimants who are neither surviving spouses nor children of the deceased employee.

Ms. Weatherly argues that she is entitled to the benefits accorded a surviving spouse, even if that entitlement is not explicitly authorized under the Act. The recent *Johnson* decision of the Court of Appeals explains why this argument fails.

In *Johnson,* the Court considered whether the petitioners, widows of Baltimore City firefighters, "may collect the service pension benefits in addition to the full workers' compensation death benefits, or whether the workers' compensation death benefits must be reduced by the amount of service pension benefits the widows are currently receiving." 387 Md. at 3, 874 A.2d 439. The Court reviewed the interplay between LE § 9–503 and Maryland Code (1991, 1999 Repl. Vol.), § 9–610 of the Labor and Employment Article, and concluded that the statutory language of each "is clear and unambiguous." *Id.* at 7–10, 22, 874 A.2d 439. The Court held that, although a firefighter or other public safety employee suffering from a certain occupational disease could collect dual workers' compensation and service pension benefits while alive, in the absence of a statutory provision the same ability to collect did not extend "to the dependents of those individuals." *Id.* at 22, 874 A.2d 439. Instead, unless the General Assembly changes the statutory scheme, the amount of workers' compensation death benefits collected by a dependent must be offset by the amount that person receives from the deceased employee's service pension. *Id.* at 21–22, 874 A.2d 439.

We answer Ms. Weatherly's argument with these words from *Johnson:* "The Legislature is often faced with balancing opposing interests and making difficult choices. This case discusses some of the lines drawn by the Legislature...." *Id.* at 2, 874 A.2d 439. Like *Johnson,* this case involves an instance of legislative line-drawing. In the realm of dependency benefits, surviving spouses and children stand on one

side of the line, and all other "wholly dependent" individuals stand on the other. As in *Johnson,* the issue raised by Ms. Weatherly's appeal "has been addressed and decided by the Legislature." *Id.* at 3, 874 A.2d 439. The General Assembly has determined that, because Ms. Weatherly is not a surviving spouse, her benefits are capped at $45,000.00.

*Johnson* also supplies the response to Ms. Weatherly's reliance on *Breitenbach, supra.* In *Breitenbach,* the Court of Appeals had to decide whether a provision in the Act requires an employer and insurer to reimburse an employee for the cost of travel to and from a medical treatment provider. The Court determined that the provision is ambiguous, and concluded that the ambiguity should be resolved in the claimant's favor. 366 Md. at 484, 784 A.2d 569. *Johnson* and the present case, however, involve construction of sections of the Act that are clear and unambiguous. Moreover, in *Breitenbach,* other sections of the Act assisted in the interpretation of an ambiguous provision of the Act dealing with coverage for transportation expenses, *id.* at 481–85, 784 A.2d 569, whereas the sections at issue in the present case, and those at issue in *Johnson,* deal with benefits. Nowhere else in the Act are dependency benefits addressed in a manner that implies a general entitlement to them.

We are mindful that some might view the Act as inequitable in its treatment of non-spousal dependency benefits. Yet, as the Court of Appeals explained in *Gleneagles, Inc. v. Hanks,* 385 Md. 492, 504–05, 869 A.2d 852 (2005), any inequity in the Act must be resolved by the General Assembly, if it so chooses:

> We have previously discussed seeming inequities in the Workers' Compensation Act and concluded that the Legislature must be the body to remedy any unfairness, should they consider it necessary. As stated in *Paul v. Glidden* [*Co.*], 184 Md. 114[, 119, 39 A.2d 544] (1944),
>
>> [t]he Workmen's Compensation Act was passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured

workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries. There were, in its first enactment, certain inequalities which have, from time to time, been corrected by amendment. There may be a need for further amendment. As to this, we express no opinion, as it is not within our province. Some of the present provisions may be inequitable. To consider this, is also outside the scope of our duties. The enactment is made in pursuance of the police power . . . and the details must be left to the judgment of the Legislature, unless some basic right is infringed.

We cannot read into the Act a benefit the legislative body chose not to provide.

### Denial of Motion for Attorneys' Fees

 Finally, Ms. Weatherly asserts that appellees' appeal to the circuit court and their motion to stay the Commission's February 2, 2004 order were "frivolous" because Maryland Code (1991, 1999 Repl.Vol.), § 9–741 of the Labor and Employment Article, clearly and unambiguously provides that a circuit court may not stay an award of the Commission. She argues, from this, that the court erred in refusing to award attorneys' fees.

 Ms. Weatherly, however, never asked the court to rule on her motion for attorneys' fees at the June 11, 2004 motions hearing. Critical to our determination of an issue on appeal is the trial court's opportunity to consider the issue. *See Tretick v. Layman,* 95 Md.App. 62, 74, 619 A.2d 201 (1993) (quoting *Braun v. Ford Motor Co.,* 32 Md.App. 545, 548, 363 A.2d 562, *cert. denied,* 278 Md. 716 (1976), for the proposition that " 'error in a trial court may be committed *only by a judge,* and *only when he rules, or, in rare instances, fails to rule,* on a question *raised before him in the course of a trial,* or in pre-trial or post-trial proceedings' ") (alteration in original).

At the outset of the motions hearing, the court stated that it was aware of the pending motions, including Ms. Weatherly's "request for fees and costs." Throughout the hearing, both parties presented argument on the various motions for summary judgment. The court granted appellees' motion regarding the Commission's February 2, 2004 order, and denied Ms. Weatherly's motion in that case. The court also granted Ms. Weatherly's motion for summary judgment regarding the Commission's March 31, 2004 order.

The court then asked counsel, "Good enough?" Both counsel responded by thanking the court and agreeing to collaborate on a proposed written order to submit for the court's signature. Ms. Weatherly did not request, then or thereafter, a ruling on her motion for attorneys' fees, and no ruling on that motion appears in the court's written order, the docket entries, or any other place in the record. Ms. Weatherly may not be heard to complain now about a ruling the court was never asked to make. *See* Md. Rule 8–131(a).

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**